551 So.2d 665 (1989)
DON SMART & ASSOCIATESCENTURY 21
v.
LANIER BUSINESS PRODUCTS and United States Leasing Corporation.
No. CA 88 1140.
Court of Appeal of Louisiana, First Circuit.
October 11, 1989.
*667 Waldon Hingle, Slidell, for plaintiff-appellee.
Richard Macaluso, Hammond, for defendant-first-appellant Lanier Business Products.
Clarence F. Favret, Jr., New Orleans, for defendant-second-appellant U.S. Leasing Corp.
Before CARTER, SAVOIE and ALFORD, JJ.
*668 ALFORD, Judge.
The defendant, Lanier Business Products (Lanier), appeals the trial court's judgment in favor of the plaintiff, Don Smart & AssociatesCentury 21 (Smart) whereby the court rescinded the lease/sale of two copying machines for redhibitory defects and awarded Smart $8,792.25 for payments made to United States Leasing Corporation (USLC) $1,500.00 in repair costs, $200.00 in damages and $3,000.00 in attorney fees, plus interest and all costs. Lanier also appealed the judgment rendered against it in favor of third party plaintiff, USLC, in the amount of $12,046.46, plus interest and costs. USLC appealed the dismissal of its reconventional demand against Smart.

FACTUAL BACKGROUND
Smart, a real estate sales firm located in Slidell, Louisiana, lease/purchased two 3-M Secretary II Beta copiers from Lanier for separate offices in July and November of 1980, respectively.[1] The managers of the respective offices acquired the machines after discussing their needs with the same Lanier sales representative, Randy Humphrey. In conjunction with the execution of the agreements between Lanier and Smart, Lanier transferred the contracts to USLC, and Smart made payments on its account to USLC.
Prior to the real estate managers' decisions to acquire the specific machines in question, both testified that they explained to Humphrey the need for machines capable of (1) producing consistently superior copies in order for the company to maintain its professional image, (2) handling their growing need for copies and (3) reproducing mailing labels for mailouts. Humphrey assured them the copiers could handle the load required by the expanding business, would make consistently superior quality copies "as good as the original", and would reproduce mailing labels as long as the correct mailing labels were used. Additionally, one of the managers indicated the need for quick service in the event of a problem since it was essential to their business to have immediate reproduction of contracts. Humphrey did not advise either of the managers that the copiers were incapable of copying edge to edge, a capability which was needed by Smart since sales agreements often have initials in the margins but which the managers did not specifically mention. Humphrey instructed Smart's employees briefly about operator maintenance, indicating that cleaning of the coronas and other maintenance only needed to be done on a weekly basis and would only take a short time.
Within three months after delivery, the copiers began producing copies that were smeared, blurry and streaked. The paper jammed often and the initials in the margins on sales agreements did not reproduce. The machine did not make labels (the print would rub off or smudge as soon as it was touched) even though Smart's employees used the recommended products. Lanier made numerous service calls to correct copy quality, jamming, and other problems, which corrections, according to testimony by Smart's employees, lasted only a few days. In early 1982, Smart consolidated its two offices and moved both machines to one location. Smart continued using the machines, interchanging them on the basis of whichever one was working better at a specific time, and shutting the other one off until service work could be performed. This procedure continued until Smart decided to demand recission of the lease/purchase agreement, and attempted to tender the two copiers back to Lanier in November of 1982. Lanier refused to accept the tender.

PROCEDURAL HISTORY
On May 17, 1983, Smart filed suit against Lanier and USLC for cancellation of the leases, return of all payments, damages, interest, costs, and attorney's fees. Alternatively, *669 Smart prayed for recission of the lease/sale agreements because of latent defects. USLC filed a reconventional demand against Smart for the unpaid lease payments and a third party demand against Lanier for indemnity, plus costs, expenses and attorney's fees. The case was tried on September 23, 1985; counsel were granted time to file post-trial briefs, and the matter was taken under advisement.
On February 27, 1986, the judge issued written reasons holding that the agreements between Lanier and Smart constituted contracts of sale rather than lease, that there was sufficient evidence to show latent defects in the machines at the time of purchase, and that Lanier knew of the defects. The court rescinded the lease/sale agreements and awarded damages, attorney's fees, costs or repair and return of payments as stated previously. At that time, the court dismissed USLC's reconventional demand but did not rule on their third party demand. On March 18, 1986, the judge issued amending and supplemental reasons for judgment and granted USLC's third-party demand. On March 19, he signed a judgment in accordance with these reasons.
Thereafter the court issued a supplemental judgment as well as granting an order to strike the judgment, both of which are not in the record. On April 2, 1987, the court sought review of the proceedings by the First Circuit, and the First Circuit remanded the case back to the court to allow the court to make the record whole and to render a judgment.
On July 21, 1987, the court issued reasons for judgment reaffirming its prior decision and on March 30, 1988, signed a judgment in favor of Smart against Lanier and USLC in the amount of $8,792.25 plus interest and costs and against Lanier solely for $1,500.00 for repairs, $200.00 for damages for inconvenience and $3,000.00 attorney's fees, plus interest and costs. The judgment dismissed USLC's reconventional demand against Smart and granted USLC's third party demand against Lanier for $12,046.46 plus interest and all costs.
Lanier then perfected a suspensive appeal, contending that the trial court erred (1) in finding that the photocopiers were defective and not reasonably fit for their intended use, (2) in finding Smart met its burden of proof, (3) in awarding attorney's fees against a non-manufacturing vendor, (4) in awarding damages against a non-manufacturing vendor, and (5) in failing to award a reduction in price or a credit for the use and benefit enjoyed by Smart. Additionally, Lanier raised, for the first time, a peremptory exception claiming prescription of Smart's claims, challenged the validity of the judgment in favor of USLC and raised the peremptory exception alleging no cause of action and no right of action against USLC. USLC appealed the trial court's decision dismissing their reconventional demand against Smart for $12,046.46 in unpaid installments, plus interest. Smart did not appeal or answer the appeal.

REDHIBITORY DEFECTS
As stated in Cox v. Lanier Business Products, Inc., 423 So.2d 690, 692 (La.App. 1st Cir.1982), writ denied, 429 So.2d 129 (La.1983):
In order to maintain an action of redhibition, the plaintiff must prove that the vendor sold the thing to him, and that the thing contained a "redhibitory defect". A redhibitory defect entitling the buyer to rescind the sale is some non-apparent defect existing before the sale, in the thing sold, which renders it useless or its use so imperfect that the buyer would not have bought it if he had known of the defect. The buyer may prove the existence of a redhibitory defect before the sale by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. LSA-C.C. arts. 2520, 2521, 2530. (Citations omitted.)
The ultimate question of the existence of a redhibitory vice is a question of fact for the trial court which should not be disturbed in the absence of manifest error. Calandro's Supermarket, Inc. v. Hussman Refrigeration, Inc., 525 So.2d 316 (La.App. 1st Cir.1988).
*670 After reviewing the evidence, the testimony and considering the law, we find that the trial court was not manifestly wrong in determining that there was "sufficient evidence in the record from which the Court may infer the existence of latent defects in the machine [sic] at the time of their purchase." Both machines showed their inability to produce consistently superior copies within three months of delivery; there was ample evidence of smudged copies, streaks, and blurring and of numerous service calls to correct the poor copy quality problems. Smart personnel testified that repair attempts lasted only a few days and that, thereafter, they had to contend with the poor quality copies or have copies made outside their offices. The record may not reflect all the repairs made since Lanier's employee who was familiar with the company's accounting records on these machines admitted that some the service records on these machines may have been missing. Additionally, the record shows that the machines were incapable of edge to edge printing, that they needed daily instead of weekly cleaning as represented, that they would not produce mailing labels as represented and that they wasted paper and created problems because of jamming. Don Smart and his managers all testified that had they known of these problems, they would not have purchased the copiers as their use was so inconvenient as to be of no use.
Lanier claimed that most of the service work it performed was for required periodic maintenance such as changing the developer after 10,000 copies and changing the drum after 40,000 copies. However, complaints from Smart as to copy quality arose when only 2,798 copies had been run on one of the machines, some two months after initial purchase, and the drum needed replacement when 6,450 copies had been run. Moreover, Ron Fink, the former Lanier service man called by Smart and qualified as an expert, testified that the Beta machines were notorious for having copy quality problems and being hard to maintain.
Moreover, the record supports a recission of the contracts between Smart and Lanier for error. Consent of a party to a contract may be vitiated by error. Former La.C.C. art. 1819 (1870). In order to invalidate a contract based on the unilateral error of one party, it must be shown that the error affected the cause without which the contract would not have been made and that the other party knew or should have known that the matter affected by the error was the reason why the party in error made the contract. See Marcello v. Bussiere, 284 So.2d 892 (La.1973). In the instant case, Smart was uncontradicted in its contention that the main reasons for selecting these particular machines was the assurance by Lanier's salesman that they would produce consistently superior quality copies with fairly minimal weekly maintenance, and that they would copy mailing labels. The evidence in the record clearly shows the inferior copy quality, the need for daily rather than weekly maintenance and the inability of the machines to reproduce mailing labels using the recommended products. Therefore, it is apparent that the judge was not clearly wrong in invalidating the contracts in question.

PRESCRIPTION
Lanier raises the prescription issue, claiming that under La.C.C. art. 2534, the applicable prescriptive period was one year after the date of sale. As noted above, the court found that the machines were sold to Smart in July and November of 1980, respectively. No party to this action challenged the court's determination that the transactions were sales or the dates of the transactions. Therefore, it is apparent that Smart, by filing suit in May of 1983, exceeded the one-year limit. However, it is well settled jurisprudentially that the one year prescriptive period is interrupted by the seller's attempts to repair defects. Bell v. Battles, 532 So.2d 479 (La.App. 1st Cir.1988). If the seller attempts to remedy the defect, the prescriptive period does not start to run "until all attempts to repair the defect are abandoned by the seller or until the last promise of repair is made by the seller to the buyer." Robertson v. Chrysler Corporation, *671 424 So.2d 1184 (La.App. 1st Cir.1982). A review of the testimony and exhibits shows that Lanier's last repair calls for poor copy quality problems on one of the machines was on February 24, 1983, and on the other machine, on July 2, 1982, well within one year of the suit date. Therefore, prescription for the redhibitory defects had not run. Moreover, as stated previously, the record supports Smart's contention that the contracts should be annulled because of a vice of consent, namely error. The prescriptive period for an action to annul a relatively null contract at the time this suit commenced was ten years. Former La.C.C. art. 2221, as amended by Acts 1980, No. 308.
Lanier's plea of prescription is without merit.

ATTORNEY'S FEES AND DAMAGES
The seller, who knows about but fails to declare the vice of the thing he sells, is answerable to the buyer for reasonable attorney's fees and damages in addition to the return of the purchase price and any expenses incurred by the buyer. La. C.C. art. 2545. This liability extends to non-manufacturing sellers. Additionally, a declaration made by the seller that the thing sold possesses some quality which he knows it does not possess gives rise to redhibition and to damages, including reasonable attorney's fees. La.C.C. art. 2547.
The trial court concluded that there was sufficient evidence in the record to support the determination that the seller knew of the defects and did not inform the client. We agree. The salesman was not called to testify by Lanier. There was no explanation as to this failure, and no indication that the witness was unavailable. The unexplained failure of a party to call a witness who possesses peculiar knowledge of material facts pertinent to the resolution of the case entitles the opposing party to the presumption that the witnesses' testimony would be unfavorable. Arnone v. Anzalone, 481 So.2d 1047 (La.App. 1st Cir. 1985). It is apparent that the salesman possessed knowledge of material facts as to the contracts in question. Therefore, it
can be presumed that the salesman's testimony would have supported that of Smart's witnesses, namely, that he assured Smart's personnel that the machines would consistently produce quality copies whereas it is apparent from testimony by Smart's expert that Lanier was having problems with copy quality on Secretary II Beta copiers. Moreover, he represented to Smart's personnel that the machines would reproduce mailing labels, which they would not; he indicated only weekly maintenance was needed, when in fact daily maintenance was required; and he failed to advise that the copiers were incapable of edge to edge copying. Therefore, the trial court's determination that the plaintiff should recover reasonable attorney's fees is supported by the record and is not clearly wrong.
However, Lanier is correct in its contention that the $200.00 damage award for inconvenience is in error. Damages for inconvenience are not compensable in an action for redhibition where the object of the contract was not one of intellectual enjoyment. Long v. Panther Airboat Corporation, 453 So.2d 304 (La.App. 1st Cir.1984). As stated in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433, 437 (La.1976),
Where an object, or the exclusive object, of a contract, is physical gratification (or anything other than intellectual gratification) nonpecuniary damages as a consequence of nonfulfillment of that object are not recoverable.
There is nothing in the record of the instant case to indicate that these contracts were for intellectual enjoyment; therefore, the award of $200.00 is hereby reversed.

REDUCTION IN PRICE/APPLICATION OF CREDIT
Avoidance of a sale or reduction in purchase price as a remedy for defects in a product is a factual question, the resolution of which is best left to the trier of fact. Morvant v. Himel Marine, Inc., 520 So.2d 1194 (La.App. 3d Cir.1988). Likewise, a determination to allow or disallow a credit for the buyer's use of the product is a factual determination to be *672 made by the trier of fact. In the instant case, we have determined that the trier was not clearly wrong in determining that a recission of the sale was warranted. As to a credit for the buyer's use of the product, Lanier entered no evidence into the record to reflect the value of the copies run on the machines while they were retained by Smart. However, based on testimony by Smart's personnel, there was testimony, as well as exhibits of copied material, in the record from which the judge could have determined that the copies were of little or no value, and did not warrant the application of a credit for copies made. This assignment of error is without merit.

THIRD PARTY DEMAND AGAINST LANIER
Lanier challenges, both by appeal and by exceptions alleging no cause of action and no right of action, the validity of the judgment whereby the court granted USLC's third party demand and awarded USLC $12,046.46.
USLC filed a third party demand against Lanier, seeking indemnity for any amount for which it was cast in judgment on the main demand and required to pay. Lanier does not challenge USLC's right to indemnity, but rather claims that the court erred in awarding a $12,046.46 money judgment against it when USLC had not pled or proved a cause of action to justify this amount. A review of the record and the reasons for judgment leads us to believe that the figure stated in the judgment was a mathematical error as to amount rather than an award of amount still due on the contracts. Therefore, we amend the judgment on the third party demand to show the amount of $8,792.25 plus interest and costs, which is the amount for which USLC was adjudged liable on the main demand. This determination pretermits any discussion of the peremptory exceptions based on USLC's failure to plead or prove a cause of action to justify an award of $12,046.46.

RECONVENTIONAL DEMAND AGAINST SMART
USLC filed a reconventional demand for $12,046.46 in unpaid lease installments, plus interest, against Smart, which was dismissed by the trial court. As noted previously, the court found that the contracts in question were contracts of sale rather than lease. This finding was not appealed. The contracts in question were totally invalidated and there is no evidence in the record to support USLC's contention that Smart still owes rental payments of the voided contracts, or that USLC should not be liable to Smart for the return of the purchase price payments made to USLC. We have already affirmed USLC's right to indemnity under its third party demand against Lanier.

ADDITIONAL ATTORNEY'S FEES FOR SMART
In its appellate brief, Smart seeks an additional $1,000.00 for appellate work. Smart did not answer or appeal the lower court's judgment. An appellee who seeks to revise or modify a judgment must file an appeal or answer to an appeal within the time delays. Failure to appeal or answer an appeal precludes this court's review of any issues asserted solely in brief. Hospital Corporation of America v. Robinson, 499 So.2d 246 (La.App. 1st Cir.1986). Therefore, we will not consider Smart's assertions as to an increase in attorney's fees which were raised solely in its brief.

CONCLUSION
For the foregoing reasons, we reverse that part of the trial court's judgment which awarded Smart $200.00 in damages for inconvenience against Lanier and we amend the trial court's judgment on the Third Party Demand by USLC against Lanier to read "for indemnity in the full sum of $8,792.25, together with legal interest thereon from judicial demand, until paid, and all costs of these proceedings." We affirm the judgment of the trial court in all other respects. Costs of this appeal are to be borne by Lanier and USLC.
REVERSED IN PART, AFFIRMED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED.
NOTES
[1] The record shows that Smart contracted for the first copier on July 2, 1980, with delivery on July 20, 1980. Thereafter, Smart contracted for the second machine on August 29, 1980, and accepted delivery on November 10, 1980. In his reasons for judgment, filed on February 27, 1986, the judge determined that Smart lease-purchased the copiers in July and November, respectively.