633 So.2d 240 (1993)
Idella R. VINCENT
v.
HYUNDAI CORPORATION, Hyundai Motor America and Levis Hyundai.
No. 92 CA 1987.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
Writ Denied February 11, 1994.
*241 Joseph D. Lewis, Oliver W. Williams, Baton Rouge, for plaintiff-appellant Idella R. Vincent.
William A. Morvant, Baton Rouge, Robert W. Maxwell, New Orleans, for defendant-appellee *242 Levis Hyundai, Inc., and Hyundai Motor America.
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
Idella R. Vincent (plaintiff) instituted this suit against defendants, Hyundai Corporation, Hyundai Motor America (Hyundai), and Levis Hyundai, Inc. (Levis), seeking to rescind the sale of an automobile she purchased from Levis and to recover damages and attorney's fees.[1] After trial by jury, the trial court entered judgment on the jury verdict granting plaintiff a $1,500.00 reduction in the purchase price but denying rescission of the sale. From this judgment, plaintiff appeals. We affirm.

FACTS
On April 4, 1989, plaintiff purchased a new 1989 Hyundai Sonata automobile from Levis in Baton Rouge, Louisiana for the total sum of $13,723.94. Plaintiff paid $2,000.00 toward the purchase price and financed the remaining balance. Plaintiff also spent an additional $800.00 to add a new stereo system and tinted windows to the vehicle.
One week later, plaintiff returned with the vehicle to the dealership after observing that the brakes were "bleeding" (an oily substance was coming from the front wheels). Levis diagnosed the substance as normal "brake dust," which could easily be wiped off. Within the next nine months, plaintiff returned to Levis with the vehicle on at least nine separate occasions for repair problems associated with, but not limited to, the air conditioner, heater, electrical system, starter and oil leaks. Approximately two years after the sale, plaintiff ceased driving the vehicle because the clutch would not shift into gear and eventually became completely inoperable. On August 1, 1990, plaintiff filed the instant action to rescind the sale.
In the petition, plaintiff alleged that she returned the vehicle to Levis on numerous occasions for repairs and that she was entitled to relief under the state's lemon and/or redhibition laws because the vehicle was not fit for its intended use as evidenced by the number of repairs, some of which were either not corrected or attempted four or more times within the first year of purchase. Plaintiff requested damages in the amount of $7,896.48, which included her down payment of $2,000.00, sixteen (16) installment payments made in the amount of $318.53 each and the $800.00 she spent on the enhancements. Plaintiff further requested that defendants, for the return of the vehicle to them, assume the remaining installment notes due. Additionally, plaintiff demanded legal interest from the date of judicial demand until paid, all costs and attorney's fees.
Levis denied liability and, in the position of third party plaintiff, filed a third party demand against Hyundai for indemnification for all or part of the principal demand asserted by plaintiff. Levis later voluntarily dismissed without prejudice its third-party demand against Hyundai.
Hyundai also denied liability and alleged that plaintiff's purported damages were caused entirely by her own negligence and/or that of a third person for whom it had no legal responsibility. Hyundai further alleged that the vehicle was free from any vice or defect on the date of delivery and that any alleged defect arising after purchase was of an easily repairable nature that neither affected the vehicle's suitability for use nor diminished its value. Further answering the petition, Hyundai averred, in the alternative, that if the trial court determined that a redhibitory vice or defect did exist in the vehicle, then such vice or defect had been repaired, and plaintiff waived her right to bring the instant action when she allowed repairs to the vehicle and continued to use it extensively. Hyundai further, alternatively, averred that if the court determined that the vehicle had any redhibitory vices or defects, then it was entitled to a credit for depreciation and use of the vehicle and specifically pled the affirmative defenses of set-off, offset and/or compensation for said use and depreciation.
*243 The matter was tried before a jury on June 17 and 18, 1992. The jury found that the vehicle was defective at the time of sale and although the defective condition did not warrant rescission of the sale, the evidence was sufficient to support a judgment in quanti minoris for a reduction in the purchase price in the amount of $1,500.00. The trial court entered judgment on the jury verdict and awarded plaintiff legal interest from the date of judicial demand and all costs. Plaintiff appealed and submitted the following assignment of error for review:
The jury erred in denying appellant relief under the Redhibition and Lemon Law.
In her sole assignment of error, plaintiff urges this court to find that the jury erred in concluding that she did not have a cause of action within the ambit of the state's redhibition and "lemon" laws. Defendants, to the contrary, assert that the instant case is a "classic example of the `credibility cards' falling where they may" and that a review of the record supports the jury's factual findings.
We will review this assignment of error by first determining whether the jury erred in concluding that plaintiff did not have a cause of action in redhibition.

REDHIBITION
Plaintiff asserts that she is entitled to rescind the sale of the vehicle because it immediately manifested several defects after the sale which rendered it absolutely useless, or its use so inconvenient and imperfect that she would not have purchased it had she known of the defects.
In a contract of sale, the seller is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for its intended use. LSA-C.C. arts. 2475, 2476, 2520. If the seller breaches the warranty, the buyer may have a cause of action in redhibition.
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. LSA-C.C. art. 2520. In order to maintain an action in redhibition, the plaintiff must prove that (1) the seller sold the thing to him and that it is either absolutely useless for its intended purpose or its use so inconvenient or imperfect that had he known of the defect he would never have purchased it; (2) the thing contained a non-apparent redhibitory defect at the time of sale; and (3) the seller was given an opportunity to repair the defect. Coffey v. Cournoyer Oldsmobile-Cadillac-GMC, Inc., 484 So.2d 798, 800-801 (La.App. 1st Cir.1986); Purvis v. Statewide Trailer Sales, Inc., 339 So.2d 403, 407 (La. App. 1st Cir.1976). The buyer may prove the existence of a redhibitory defect before the sale by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. LSA-C.C. arts. 2520, 2521, 2530; Cox v. Lanier Business Products, Inc., 423 So.2d 690, 693 (La.App. 1st Cir.1982), writ denied, 429 So.2d 129 (La.1983); Don Smart & Associates Century 21 v. Lanier Business Products, 551 So.2d 665, 669 (La.App. 1st Cir.1989).
In the instant case, the jury found that the vehicle was defective at the time of the sale but that the defects did not render the vehicle absolutely useless, or its use so inconvenient and imperfect that, judged by the reasonable person standard, plaintiff was entitled to rescind the sale. The jury further found that a reduction in the purchase price was the appropriate remedy rather than rescission. Plaintiff contends that the jury erred in concluding that the defects were not redhibitory and urges this court to reverse the jury's finding in this regard and to rescind the sale.
The ultimate question of the existence or non-existence of a redhibitory vice or defect is a question of fact for the jury which should not be disturbed in the absence of manifest error. Don Smart & Associates, 551 So.2d at 669. Likewise, the avoidance of a sale or reduction in the purchase price as a remedy for defects in the thing purchased is also a factual question, the resolution of which is best left to the trier of fact. Don Smart & Associates, 551 So.2d at 671. After thoroughly reviewing the record, we are satisfied that the jury did not err in concluding *244 that the defect existing in the vehicle at the time of the sale was not a redhibitory vice or defect.
Plaintiff argues that even if one particular vice or defect is not sufficient to render the vehicle redhibitory, an accumulation of vices in a vehicle provides the basis for a successful redhibitory action where the accumulative problems with the vehicle render it absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it. While it is true multiple defects can collectively form the basis of a redhibitory action, even though many of the defects are minor or have been repaired, the evidence in the instant case clearly established that the defects in plaintiff's vehicle were neither redhibitory nor rendered the vehicle unfit for its intended use. See, Burch v. Durham Pontiac Cadillac, Inc., 564 So.2d 380, 383 (La.App. 1st Cir.), writ denied, 569 So.2d 968 (La. 1990).
Although plaintiff brought the vehicle in for repairs on several occasions and stopped driving it when the clutch failed approximately two years after the sale, uncontroverted evidence presented at trial established that, prior to that time, she had driven the vehicle continuously and quite extensively. At the time of trial, the odometer showed that the vehicle had been driven over 60,000 miles, despite plaintiff's testimony that she had only driven the vehicle to and from work, a distance of approximately 25 miles daily from Clinton to Baton Rouge, with the exception of one trip to Biloxi, Mississippi. Uncontroverted testimony also established that when compared to the customary driving habits of motorists in the Baton Rouge area, the mileage on the vehicle was excessive.[2]
The evidence also clearly supports the jury's finding that the defects were not sufficiently serious to be considered redhibitory in nature. In fact, the record reveals that most, if not all, of the claimed defects were easily corrected and performed at no cost to plaintiff. For example, when plaintiff returned with the vehicle to Levis on August 3, 1989, four months after the sale, complaining of improperly working electrical accessories (mirrors, trunk release button, interior lights and clock), smoke coming through the air conditioner vents and a "winding" [sic] sound in the engine, Levis corrected these problems by installing a new fuse, replacing a spare missing fuse, realigning the trunk and adjusting the air conditioner vents. Levis further determined that the engine sound was normal. On this date, the vehicle had been driven 10,351 miles.
Similarly, Levis just as easily repaired the vehicle when plaintiff returned with it approximately three weeks later on August 22, 1989, complaining that she smelled oil, by installing an oil drain plug and filter. Levis also installed a special order part for the mirror and oil pressure switch. On this date, the vehicle had been driven 11,386 miles.
Approximately three months later, on November 20, 1989, the vehicle was towed into Levis, at its expense, when the starter failed to operate. Plaintiff also lodged complaints concerning the vehicle's heater and mirror switch on this date. To correct these problems, Levis replaced the starter, rerouted the heater's control head cables and advised plaintiff how to properly operate the mirror switch. On this date, the vehicle had been driven 17,485 miles.
Less than two months later, on January 5, 1990, plaintiff returned the vehicle to Levis for repair of the rear window defroster. The repair order shows that the defroster worked properly. Bradley Braswell, Hyundai's field technical manager who inspected the vehicle for trial, testified that the rear defroster had the proper supply of voltage to the grid in the rear of the vehicle, but that the tab which attached to the actual grid was broken thereby causing the grid not to receive power. Braswell speculated that the connection broke when the rear window was tinted. On this date, the vehicle had been driven 20,516 miles.
Thereafter, on March 9, 1990, in response to plaintiff's complaint of oil and transmission fluid leaking from the vehicle, Levis replaced a leaking valve cover gasket. Plaintiff also *245 complained that the motor made a "cracking" noise when turned on and that the fan did not come on. Levis determined that the fan was operating normally, but could not duplicate the noise plaintiff heard. On this date, the vehicle had been driven 23,829 miles.
On April 13, 1990, at Levis' request, plaintiff returned the vehicle to have the hood latch replaced and the fuel line's hose clamp repositioned.[3] Levis also tightened the valve cover gasket after plaintiff reported that oil was dropping on the manifold. On this date, the vehicle had been driven 25,495 miles.
On May 18, 1990, plaintiff brought the vehicle to Levis again for repairs because "the air conditioner was not blowing and the heater blew constantly." Levis recharged the air conditioning system and tightened the pressure switch. No problem was detected with the heater. On this date, the vehicle had been driven 28, 139 miles.
One week later, on May 22, 1990, plaintiff complained that the air conditioner was not blowing cold air. Levis replaced two hoses and the liquid and suction lines to seal or eliminate freon leakage. Levis also evacuated and recharged the air conditioning system. On this date, the vehicle had been driven 28,580 miles.
Eight days later, on May 30, 1990, plaintiff presented the vehicle to Levis again for repair of the air conditioner which she claimed was not blowing cold air. This time Levis corrected the problem by replacing two different hoses. On this date, the vehicle had been driven 28,984 miles.
On or about April 1, 1991, the vehicle became completely inoperable when the clutch failed. Plaintiff did not tender the vehicle to Levis for repair of the clutch. By this date, the vehicle had been involved in two accidents and driven over 60,000 miles.
While it may be argued that the presence of the proven defects brings the question of whether the defects rendered the car so inconvenient and imperfect that a reasonable buyer would not have purchased it had he known of the defect much closer to redhibition, the totality of the circumstances supports the jury's conclusion that plaintiff was only entitled to a reduction in the purchase price. The nature of the defects and the period of extensive usage of the vehicle by plaintiff support a conclusion that the defects merely diminished the utility of the vehicle, constituting a partial failure of consideration, rather than redhibitory defects which would justify a rescission of the sale. Coffey v. Cournoyer Oldsmobile-Cadillac-GMC, Inc., 484 So.2d at 800-801; Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798, 802 (La.App. 1st Cir.1975). In a redhibitory action where the evidence establishes only a partial failure of consideration, a reduction in the purchase price rather than a rescission of the sale is the appropriate remedy. LSA-C.C. art. 2543; Coffey, 484 So.2d at 800-801; Wade, 307 So.2d at 802. Thus, the jury was not manifestly erroneous or clearly wrong in determining that plaintiff was entitled to a reduction in the purchase price rather than rescission of the sale. This part of plaintiff's assignment of error is without merit.

THE LEMON LAW
Plaintiff also contends herein that the jury erred in concluding that she did not have a cause of action within the ambit of the state's "Lemon Law." She argues that "reasonable persons could only conclude that the... vices and defects encountered by [her] in her new vehicle were nonconformities or defects, which substantially impaired the use of the vehicle or its market value" and that the defendants failed to correct the defects. Plaintiff contends that the jury's failure to grant her relief under the state's Lemon Law constitutes reversible error.
The law relative to new motor vehicle warranties is found in LSA-R.S. 51:1941 et seq., as enacted by Act No. 228 of 1984. Collectively, these statutes are commonly referred to as the Louisiana "Lemon Law."
LSA-R.S. 51:1942 sets forth the duty of the manufacturer, or his authorized dealer, to repair a new motor vehicle. Section 1942 states:

*246 If a new motor vehicle does not conform to an applicable express warranty, and the consumer reports the nonconformity to the manufacturer or any of its authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or during a period of one year following the date of the original delivery of the motor vehicle to a consumer, whichever is the earlier date, the manufacturer, its agent, or its authorized dealer shall make such repairs as are necessary to conform the vehicle to such warranty, notwithstanding the fact that such repairs are made after the expiration of such terms or such one-year period.
The time in which the manufacturer or authorized dealer must conform a motor vehicle to the applicable express warranties is also limited by statute and is found in LSA-R.S. 51:1943 A which states:
A. It shall be presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warranties if the vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days or the same nonconformity has been subject to repair four or more times by the manufacturer, its agents, or its authorized dealer within the warranty term or during a period of one year following the date of the original delivery of the motor vehicle to the consumer, whichever is the earlier date.
The liability of the manufacturer or authorized dealer to the buyer, when he is unable to conform the motor vehicle to the applicable express warranties, is set forth in LSA-R.S. 51:1944. In pertinent part, Section 1944 states:
A. If after four or more attempts within the express warranty term or during a period of one year following the date of the original delivery of the motor vehicle to the consumer, whichever is the earlier, the nonconformity has not been repaired or if the vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days during the warranty period, the manufacturer shall:
(1) Replace the motor vehicle with a comparable new motor vehicle, or, at its option,
(2) Accept return of the motor vehicle and refund the full purchase price plus any amounts paid by the consumer at the point of sale, and all collateral costs less a reasonable allowance for use to the consumer, or any holder of a perfected security interest in the motor vehicle, as their interest may appear, if the transaction was a sale....
Under the Lemon Law, a "nonconformity" means any specific or generic defect or malfunction, or any defect or condition which substantially impairs the use and/or market value of a motor vehicle. LSA-R.S. 51:1941(7).
In the instant case, the jury determined that plaintiff's vehicle was not defective within the meaning of LSA-R.S. 51:1941 et seq. (Lemon Law) as set forth above. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong". Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973). After reviewing the record in its entirety, we cannot say that the jury was manifestly erroneous or clearly wrong in finding that plaintiff failed to prove that she was entitled to relief under the provisions of LSA-R.S. 51:1941 et seq. As clearly evidenced by the record, Levis performed the necessary repairs to conform the vehicle each time plaintiff presented it for repair. The vehicle was never out of service by reason of repair for a cumulative total of thirty or more calendar days. The same repair was not attempted four or more times. LSA-R.S. 51:1942; LSA-R.S. 51:1943; LSA-R.S. 51:1944. This part of plaintiff's assignment of error is also without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant, Idella R. Vincent.
AFFIRMED.
*247 FOIL, J., concurs in part and dissents in part. I would grant attorney fees to the plaintiff.
NOTES
[1] Hyundai Corporation is an unknown corporation upon whom plaintiff never attempted service; Hyundai Motor America is the distributor of the vehicle; Levis Hyundai, Inc. is the seller.
[2] The average is 12,000 miles annually.
[3] These repairs were made pursuant to what is known in the automobile industry as a "campaign", wherein the manufacturer voluntarily replaces a part as opposed to a recall.