693 So.2d 1257 (1997)
Tara L. JACKSON
v.
SLIDELL NISSAN and Nissan Motor Acceptance Corporation.
No. 96 CA 1017.
Court of Appeal of Louisiana, First Circuit.
May 9, 1997.
*1258 Donata T. Boutte, Law Office of Cardell Thomas & Assoc., New Orleans, for Plaintiff-Appellant Tara L. Jackson.
Robert M. Adams, Jr., Shows, Cohn & Cali, Baton Rouge, for Defendant-Appellee Slidell Nissan.
James C. Young, Merle F. Shoughrue, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for Defendant-Appellee Nissan Motor Acceptance Corporation.
Joseph L. Spilman, III, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for Defendant-Appellee Nissan Motor Corp. in U.S.A.
*1259 Before CARTER, LeBLANC and PARRO, JJ.
PARRO, Judge.
This appeal is brought by Tara Jackson, seeking this court's review of judgments dismissing her redhibition and lemon law claims on the basis of no right of action and granting a defendant's motion for summary judgment on a reconventional demand for a deficiency judgment against her. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND
Ms. Jackson bought a 1993 Nissan pickup truck in July 1992 from Slidell Nissan. The sale was financed through a security agreement which was assigned by the dealer to Nissan Motor Acceptance Corporation ("NMAC"). In her petition, Ms. Jackson claims the truck had serious and continuous mechanical problems from the time she bought it, and Slidell Nissan was unable to repair it, despite numerous attempts. The most significant problem was a condition which caused the vehicle to "surge forward without warning." She alleges Slidell Nissan admitted in a July 1993 letter to the Better Business Bureau that it had tried to fix the problem several times during the year and had even called the "dealer hotline" for advice, but had been unable to fix the problem. A copy of this letter is attached to her petition. At this point, Ms. Jackson stopped making the monthly payments to NMAC and sought legal advice.
Her attorney tried to negotiate a settlement with NMAC to voluntarily surrender the truck in satisfaction of the debt. The record contains a memo to Ms. Jackson from her attorney, suggesting she accept the "Nissan Motor Co." proposal to settle her claim by voluntarily giving up the truck in exchange for cancellation of the remaining debt. Apparently on the basis of some verbal assurances to this effect, Ms. Jackson voluntarily surrendered the vehicle.[1] However, the existence of any such agreement is disputed, and it may never have been finalized. At any rate, NMAC initiated an executory proceeding and eventually had the vehicle formally seized and sold, with appraisal, at a sheriff's sale.
Ms. Jackson's attorney decided she could no longer handle the case, and advised Ms. Jackson to preserve her claims by filing suit. Heeding this advice, on May 4, 1994, Ms. Jackson filed suit in proper person and in forma pauperis in the City Court of Slidell. Her petition stated it was a claim for losses under the Louisiana "Lemon Law" and named Slidell Nissan and NMAC as defendants. She asked for cancellation of the remaining debt, reasonable damages, legal interest and court costs.
Ms. Jackson later filed an "Affidavit for Damage to Credit," stating Slidell Nissan and NMAC had filed a bad credit report against her, as a result of which she could not get credit, her insurance was canceled, and she had problems with her operator's license. Although not styled as such, the pleading is in the nature of an amended petition, and asks the court to allow this "demand" to be filed as part of the suit.
Ms. Jackson also filed a supplemental and amending petition, naming the vehicle manufacturer, Nissan Motor Corporation in U.S.A. ("Nissan"), as a defendant, and seeking damages against it and the other defendants under Louisiana redhibition law for the reasons stated in her original petition. The vehicle's problem was more specifically described as "an unexpected and unpredictable propensity for the throttle to lock open." In addition to the relief previously requested, Ms. Jackson asked for specific performance of a compromise and settlement agreement purportedly reached between her former attorney and the attorney for NMAC, wherein the truck would be returned, the debt canceled, and no unsatisfactory credit report would be made.[2] She also asked for all *1260 recoveries allowable under redhibition law, including attorney's fees and costs.
Slidell Nissan Partners, d/b/a Slidell Nissan ("Slidell Nissan") filed a general denial to all of the claims asserted in the various pleadings filed by Ms. Jackson. NMAC filed responsive pleadings, generally denying the allegations and incorporating exceptions of vagueness, no cause of action, and prescription. NMAC admitted financing the vehicle and foreclosing pursuant to its security agreement by executory process after Ms. Jackson stopped making monthly payments, and it asserted a reconventional demand against her for a deficiency judgment. Ms. Jackson and Mr. Blackman answered, denying all allegations of the reconventional demand.
Nissan filed exceptions of no right of action against Mr. Blackman and Ms. Jackson. Nissan argued Mr. Blackman was not the purchaser of the truck and therefore had no rights under either the lemon law or redhibition laws. Against Ms. Jackson, Nissan urged that because the truck had been repossessed by the time suit was filed, she could no longer return her vehicle to the seller or manufacturer as required by those laws. Therefore when she filed the suit, she no longer had any right of action under the lemon law or redhibition. NMAC then filed exceptions of no right of action on the same grounds asserted by Nissan, and moved for summary judgment on its reconventional demand for a deficiency judgment against Ms. Jackson. Slidell Nissan also filed exceptions of no right of action on all claims, incorporating the arguments made by Nissan.
On June 13, 1995, a hearing was held on the exceptions of no right of action and on NMAC's motion for summary judgment. Written reasons for judgment on all claims were signed September 30, 1995. On December 13, 1995, the trial judge signed a deficiency judgment in favor of NMAC and against Ms. Jackson in the amount of $12,478.14, with interest at the rate of 16.25% per annum from September 20, 1993, plus attorney's fees in the amount of $5,822.50, and all costs, subject to a credit of $5,570.56. In a separate judgment signed the same day, the trial judge also upheld NMAC's exceptions of no right of action against Mr. Blackman and Ms. Jackson, and dismissed, with prejudice, all claims made in their various pleadings. On December 14th and 19th, he signed similar judgments on the exceptions of no right of action in favor of Slidell Nissan and Nissan, respectively, dismissing plaintiffs' claims with prejudice. In his written reasons for judgment on the exceptions of no right of action, the judge accepted the arguments made by the defendants that Mr. Blackman was not a proper party because he did not purchase the truck and that Ms. Jackson had lost whatever right of action she had under the lemon law or redhibition because she could no longer return the truck to the dealer or manufacturer.
Both Mr. Blackman and Ms. Jackson filed timely appeals.[3] However, as a result of his failure to timely file an appellate brief, Mr. Blackman's appeal was dismissed by this court on July 29, 1996. Ms. Jackson urges this court to find the trial judge incorrectly applied the law in finding she had no right of action against any of the defendants and in granting NMAC's motion for summary judgment on its claim for a deficiency judgment against her.

JURISDICTION
This court notes Ms. Jackson's appeal references by date only the judgment rendered December 19, 1995, and does not specify by date the December 13, 1995 or December 14, 1995 judgments. The wording of the appeal *1261 is nonsensical; it appeals the judgment rendered "in favor of defendant, and against plaintiff insofar as the Judgment dismisses defendant's Exceptions of No Right of Action against Nissan Motor Corporation in U.S.A., Nissan Motor Acceptance Corporation and Slidell Nissan." (emphasis added). The judgments clearly did not dismiss those exceptions; they were sustained by the court and Ms. Jackson's claims were dismissed. NMAC argues that because of the way Ms. Jackson's notice of appeal is worded, this court has no jurisdiction to entertain issues pertaining to any judgment other than the one signed December 19, 1995. However, this court is mindful of this plaintiff's status as a pro se litigant. Although the wording of her motion for appeal does not fit any of the circumstances, she obviously was trying to appeal all of the judgments against her. Her brief raises issues pertaining to the judgments on the exceptions in favor of all defendants, and also discusses issues pertaining to the deficiency judgment rendered in favor of NMAC.[4]
Appeals are favored in the law. General Motors Acceptance Corp. v. Deep South Pest Control, Inc., 247 La. 625, 173 So.2d 190, 191 (1965). The defendants do not allege they have been prejudiced by this plaintiff's less than artful wording of her notice of appeal or her error in omitting the dates of some of the judgments rendered against her. The circumstances indicate Ms. Jackson intended to appeal all of the judgments on the exceptions, as well as the deficiency judgment in favor of NMAC. Therefore, we will address plaintiff's appeal of the legal issues relating to all of the judgments rendered against her. See State, Dept. of Transp. & Dev. v. Estate of Summers, 527 So.2d 1099, 1101-1102 (La.App. 1st Cir.1988).

APPLICABLE LAW

No Right of Action
The peremptory exception pleading the objection of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. LSA-C.C.P. art. 927(5); Falco Lime, Inc. v. Plaquemine Contracting Co., Inc., 95-1784 (La.App. 1st Cir. 4/4/96), 672 So.2d 356, 359. When considering the exception, we ask whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular grievance. The exception does not raise the question of the plaintiff's ability to prevail on the merits nor the question of whether the defendant may have a valid defense. Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 597 So.2d 1155, 1158 (La.App. 1st Cir.1992). Evidence supporting or controverting an objection of no right of action is admissible. Bank of New Roads v. Livonia South, Inc., 527 So.2d 1132, 1135 (La.App. 1st Cir.), writ denied, 532 So.2d 150 (La.1988). The party raising a peremptory exception bears the burden of proof. Falco Lime, 672 So.2d at 359. To prevail on a peremptory exception pleading the objection of no right of action, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. Jones v. McDonald's Corp., 618 So.2d 992, 995 (La.App. 1st Cir.1993).

Redhibition
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. LSA-C.C. art. 2520.[5] A buyer *1262 may bring an action against all sellers in the chain of sales back to the primary manufacturer to rescind the sale for breach of an implied warranty. Womack and Adcock v. 3M Business Products Sales, Inc., 316 So.2d 795, 796 (La.App. 1st Cir.1975); Rey v. Cuccia, 298 So.2d 840, 845 (La.1974). In a suit for redhibition, the plaintiff must prove: 1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; 2) the thing contained a non-apparent defect at the time of sale; and 3) the seller was given an opportunity to repair the defect. Vincent v. Hyundai Corp., 633 So.2d 240, 243 (La.App. 1st Cir.1993), writ denied, 93-3118 (La.2/11/94), 634 So.2d 832. If defects exist which merely diminish the value or utility of the vehicle, constituting a partial failure of consideration, a reduction in the purchase price, rather than a rescission of the sale, is the appropriate remedy. LSA-C.C. arts. 2541-44; Vincent, 633 So.2d at 245; Rhodes v. All Star Ford, Inc., 599 So.2d 812, 814-15 (La.App. 1st Cir.1992). If the vehicle can no longer be returned to the seller or manufacturer, rescission of the sale is inappropriate and, if a defect is found, the recovery is limited to a reduction in the purchase price and recovery of expenses in accordance with law. See Fly v. Allstar Ford Lincoln Mercury, Inc., 95-1216 (La.App. 1st Cir. 8/21/96), 690 So.2d 759; Bourne v. Rein Chrysler-Plymouth, Inc., 463 So.2d 1356, 1359 (La. App. 1st Cir.1984), writ denied, 468 So.2d 570 (La.1985).

Lemon Law
Louisiana's lemon law was enacted in 1984; its terms are found in LSA-R.S. 51:1941 et seq. Under these provisions, if a new motor vehicle does not conform to an applicable express warranty, the consumer has certain rights against the seller and manufacturer. These include the right to have the vehicle repaired to bring it in conformity with the warranty, and if repairs are unsuccessful under certain specified circumstances, the right to have the purchase price refunded or a replacement motor vehicle provided by the manufacturer. LSA-R.S. 51:1942, 1943 & 1944. At the time of receiving the comparable replacement motor vehicle or refund under the lemon law, the consumer must surrender the defective motor vehicle to the manufacturer, along with the certificate of title, with all endorsements needed to transfer title to the manufacturer. LSA-R.S. 51:1945.

Enforcement of a Contract
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. LSA-C.C. art. 1906. A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. LSA-C.C. art.1927. Upon an obligor's failure to perform an obligation not to do an act, the court shall grant specific performance plus damages for delay if the obligee so demands. LSA-C.C. art.1986. An obligor is liable for the damages caused by his failure to perform a conventional obligation. LSA-C.C. art.1994.

Deficiency Judgment
When property has been sold under executory process after appraisal and in accordance with statutory provisions governing appraisal, the creditor may obtain a personal judgment against the mortgagor for any deficiency remaining after the application of the net proceeds of sale to the secured debt. LSA-C.C.P. art. 2771; First Guaranty Bank, Hammond, La. v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834, 841 (La.1987). The deficiency judgment proceeding is a personal action, in which the defendant has all of the rights of a defendant in an ordinary proceeding, and the mortgagee must prove the indebtedness asserted by the usual modes of proof. LSA-C.C.P. art. 2772; First Guaranty Bank, 529 So.2d at 841. The debtor may assert that an obligation is null, or that it has been modified or extinguished, and in such a case the debtor must prove the facts or acts giving rise to the nullity, modification, *1263 or extinction. First Guaranty Bank, 529 So.2d at 842.

Motion for Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup'rs of Louisiana State Univ., 591 So.2d 342, 345 (La.1991); Penton v. Clarkson, 93-0657 (La.App. 1st Cir. 3/11/94), 633 So.2d 918, 922. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The mover has the burden of establishing that no material factual issue exists. Schroeder, 591 So.2d at 345.[6] When a motion for summary judgment is made and supported by affidavits and other evidence, the adverse party may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts in response, by affidavits or otherwise, showing there is a genuine issue for trial. LSA-C.C.P. art. 967. A fact is material if it is essential to the claimant's cause of action under the applicable theory of recovery and without which the claimant could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Penton, 633 So.2d at 922.

APPLICATION OF LAW TO FACTS

No Right of Action
Ms. Jackson's petition, as amended and supplemented, stated she bought a vehicle from Slidell Nissan which was manufactured by Nissan and financed by NMAC. She claimed that within the first year after she bought it, the vehicle exhibited serious problems rendering it dangerous and unsafe in normal use, and numerous repair attempts by the seller were unsuccessful. She asked for damages against Slidell Nissan and Nissan under the redhibition and lemon laws.
Ms. Jackson claimed NMAC agreed not to file a negative credit report against her and to waive its right to a deficiency judgment in exchange for her voluntary surrender of the vehicle. She alleged that although she returned the vehicle in accordance with that agreement, NMAC failed to perform its part of the bargain, as a result of which she suffered damage to her credit rating. She asked the court to preclude NMAC's deficiency judgment action, to require NMAC to clear her credit record, and to award damages against NMAC for problems she has encountered as a result of the negative credit report.
Under the redhibition statutes, Ms. Jackson clearly has a right to bring an action against the seller of the vehicle, Slidell Nissan, and its manufacturer, Nissan. As the buyer of the vehicle, she has an interest in judicially enforcing the rights asserted in her suit, and she is certainly within the class for which the law grants a remedy for a defective product. The existence of defenses to this action which might ultimately defeat her claim cannot affect her right to bring it. Also, the mere fact that the vehicle could not be returned to the seller or manufacturer does not defeat her right to bring her claim, as the remedies available to her, should she prevail, include a reduction in price and other damages. Therefore, the trial court erred in dismissing Ms. Jackson's claims against Slidell Nissan and Nissan; she has a right of action against each of them under the redhibition laws.
Her claim against NMAC does not fit within the redhibition or lemon laws; rather, it is in the nature of an action for enforcement of a contract. Ms. Jackson *1264 claimed she was a party to a contract with NMAC, that she performed her obligation under the contract, but NMAC failed to perform its reciprocal obligation. She has a right to claim damages for breach of the contract or to seek specific performance of the contract. Ms. Jackson does not have to conclusively prove the existence or terms of such a contract in order to bring the action; the proof of her allegations and NMAC's defenses against her claims go to the merits of the action. As a party to a contract, she is within the class of persons for whom the law grants a remedy for the other party's non-performance. We find the trial court erred in dismissing Ms. Jackson's claims against NMAC; she has a right of action based on her status as a party to an alleged contract.

Summary Judgment Granting Deficiency Judgment
The court granted NMAC's motion for summary judgment, wherein it asked for a personal judgment against Ms. Jackson for the deficiency remaining after the net proceeds of the sale by executory process were applied to the secured debt. As noted in the preceding discussion, Ms. Jackson's claim against NMAC was based on an alleged contract, in which NMAC had agreed not to seek a deficiency judgment against her if she voluntarily returned the vehicle which secured the debt. She also asserted this contractual agreement as a defense to NMAC's deficiency judgment action.
The deficiency judgment proceeding is subject to all of the ordinary defenses available to a debtor, including the defense that the obligation has been modified or extinguished. When brought before the court on a motion for summary judgment, the record must show that there is no genuine issue of material fact, and therefore the mover is entitled to judgment as a matter of law. When the motion is made and supported by affidavits and other evidence, the opposing party cannot merely rest on allegations in pleadings, but must set forth specific facts which demonstrate the existence of a genuine issue for trial.
Ms. Jackson's petition claimed she only returned the vehicle because of an understanding from NMAC's attorney, Merle F. Shoughrue, that any resulting deficiency would be cancelled and no negative credit report would be filed against her. In addition to the allegations in her pleadings concerning the existence of such an agreement with NMAC, Ms. Jackson submitted a memo dated October 20, 1993, from her former attorney to her and Mr. Blackman, which stated,
The attorney for the Nissan Motor Co. proposes to settle your claim by you voluntarily giving up the truck and they would cancel all that is owed.
She also submitted a handwritten acknowledgment, showing she voluntarily delivered the vehicle on November 15, 1993.[7]
Although these documents are not sufficient to prove Ms. Jackson's claim that NMAC had agreed not to seek a deficiency judgment against her if she voluntarily returned the vehicle, they are sufficient to raise an issue of material fact. If such a contract existed and Ms. Jackson performed her part of the agreement, NMAC no longer had any right to a deficiency judgment. Accordingly, the court erred in granting a summary judgment in favor of NMAC on its claim, when the existence of material facts controverting its right to that judgment had been raised and supported.

CONCLUSION
Because we conclude Ms. Jackson has a right of action against Slidell Nissan and Nissan based on redhibition law and has a right of action against NMAC based on contract, we conclude the trial court erred in dismissing, with prejudice, Ms. Jackson's claims against the defendants. Also, because an issue of material fact was raised and supported which, if proved, would defeat NMAC's claim for a deficiency judgment against her, the court erred in granting the *1265 motion for summary judgment on that claim. Accordingly, the judgments dismissing Ms. Jackson's claims against all defendants based on exceptions of no right of action must be reversed, as must the deficiency judgment granted against her and in favor of NMAC. The case will be remanded for further proceedings. All costs of this appeal are to be borne by the defendants.
REVERSED AND REMANDED.
NOTES
[1] Another document in the record shows the truck was received into the sheriff's storage facility from Ms. Jackson on November 15, 1993. Ms. Jackson indicates she brought it there on the advice of her attorney, as part of a settlement agreement.
[2] In this pleading, Ms. Jackson also stated that the vehicle was jointly owned by her and her "common law husband," Stanley Blackman. He had previously filed a "Motion for Order Allowing a Second Party Plaintiff," seeking to be added as a plaintiff and stating Ms. Jackson bought the truck for him, he made the payments on the truck, and he was its main driver. From this point, Mr. Blackman participated in the case as an additional plaintiff.
[3] On July 30, 1996, this court denied NMAC's motion to dismiss Ms. Jackson's notice of appeal as untimely, noting notices of the judgments were required in this case, and the record contains no proof of when notices of the judgments were received by the appellants. We decline NMAC's request for reconsideration of that ruling. Actual knowledge of the signing of a judgment, absent compliance with mailing or service requirements when notice is required, is not sufficient to cause appeal delays to commence. Haywood v. Salter, 421 So.2d 1190, 1194 (La. App. 2nd Cir.1982).
[4] After filing her notice of appeal, Ms. Jackson fortunately engaged an attorney to assist her with it.
[5] The section of the Louisiana Civil Code governing redhibition, LSA-C.C. arts. 2520 et seq., was amended by Acts 1993, No. 841, § 1, effective January 1, 1995. Because the vehicle was purchased in 1992, the law in effect at that time governs, and all references in this opinion will use the language of the articles prior to revision. Accord, Palomo v. LeBlanc Hyundai Partnership, 95-278, p. 8 (La.App. 5th Cir. 10/31/95), 665 So.2d 414, 420, writ denied, 96-0399 (La.3/22/96), 669 So.2d 1214. We note, however, that the 1993 revision comments indicate the law was not changed by the amendments and further state that there is only one cause of action in redhibition, whether the remedy is rescission of the sale or reduction in the purchase price.
[6] LSA-C.C.P. art. 966 was amended effective May 1, 1996, to add a provision which states summary judgments are favored. However, this change does not affect the burden of proof. McKey v. General Motors Corp., 96-0755 (La.App. 1st Cir. 2/14/97), 691 So.2d 164.
[7] The return on service in the executory process action shows notice of seizure and notice to appoint an appraiser were not served until November 30, 1993, after Ms. Jackson had already turned in the vehicle.