510 So.2d 1366 (1987)
David F. HARPER, et ux., Plaintiffs-Appellees,
v.
COLEMAN CHRYSLER-PLYMOUTH-DODGE, INC., et al., Defendants-Appellants.
No. 86-729.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
*1367 Watson, Murchison, Crews, Arthur & Corbern, Steven D. Crews & Joseph Steinman, Natchitoches for defendants-appellants.
Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Robert G. Nida, Alexandria, Harrington and Harrington, C. Rodney Harrington, Natchitoches, for defendant-appellee.
Charles R. Whitehead, Natchitoches, for plaintiffs-appellees.
*1368 Before FORET, KNOLL and CULPEPPER[*], JJ.
KNOLL, Judge.
Defendant-appellant, Classic Manufacturing, Inc. (Classic), appeals a trial court judgment awarding plaintiffs a $15,000 reduction in the purchase price of a 1984 Dodge Mini Van and $5,000 attorney's fees. Classic contends on appeal that the trial court erred: (1) in finding the van defective at the time of the sale, (2) in awarding an excessive amount of reduction in the purchase price, and, (3) in awarding unreasonable attorney's fees.
On November 14, 1984, plaintiff purchased a 1984 Dodge demonstrator Mini Ram Van from Coleman Chrysler-Plymouth-Dodge, Inc. (Coleman) in Natchitoches. The van was customized for Coleman by Classic. Approximately one week after the purchase plaintiffs noticed what appeared to be some cracked caulking around the seam between the top of the van and the raised roof. Plaintiffs returned the van to Coleman with instructions to repair the roof and several other problems. Plaintiffs were told that repairs to the roof could only be done when the weather was dry and warm. Therefore they would have to bring the van back at a later date.
In March 1985, plaintiffs brought the van to Coleman for repair of the cracked caulking. Coleman sent the van to a local body shop which resealed but did not replace the defective caulking. Plaintiffs first noticed that the van leaked the day after its return from Coleman when a heavy rain produced a dripping effect on the passenger side where the sun visor attaches to the roof. The van was returned to Coleman the same day. Coleman attempted to repair the van and returned the van to the Harpers, however, the van continued to leak. Mr. Harper took the van to Coleman while it was raining so that Coleman's shop foreman, Mr. Phillips, could see the leak himself. Coleman then sent the van to Classic's facility in Texas. Classic was unable to repair the grossly defective seam and returned the van to Coleman. Plaintiffs refused to accept the van upon its return from Classic.
On April 30, 1985, plaintiffs filed the instant suit in redhibition wherein Coleman and Classic were made defendants. Coleman filed an answer and third party demand against Classic and Chrysler Corporation. In response to Coleman's third party demand, Classic filed an answer and cross-claim against Coleman. In response to plaintiffs' petition, Classic filed an answer and third party demand against Chrysler Corporation. In addition, Classic filed a petition of intervention seeking to be added to the list of Coleman's unsecured creditors because of a $3,118.75 debt owed to Classic by Coleman. All exceptions and pleadings were referred to the merits. After trial, Chrysler Corporation was dismissed by the court because the only evidence of any possible defect which had been alleged as to Chrysler Corporation had to do with the front seats. The trial court ruled the van was defective and that plaintiffs were entitled to a $15,000 reduction in the purchase price, subject to a $2,187.36 credit for use, plus $5,000 attorney's fees.
Classic contends the trial court was clearly wrong in its factual determination that the van was defective at the time of the sale and that the defect was attributable to Classic's customized work on the van's roof.
Redhibition is defined by LSA-C.C. Article 2520 as: "... the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." The issue is whether the van was defective at the time of the sale so as to render it useless or so *1369 inconvenient that the Harpers would not have purchased it had they known of the leaking at the time of sale. The term "defect", as contemplated by Article 2520, means a physical imperfection or deformity; or a lacking of necessary components or level of quality. Ezell v. General Motors Corporation, 446 So.2d 954 (La.App. 3rd Cir.1984), writ denied, 449 So.2d 1350 (La.1984); Williams v. Louisiana Machinery Company, Inc., 387 So.2d 8 (La.App. 3rd Cir.1980). The defectiveness of the thing sold is a factual determination by the trier of fact, whose factual conclusions will not be disturbed on appeal absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The record shows that Classic customized one Dodge Mini Van owned by Coleman for the sum of $3,118.75. The work involved taking a stripped down version of the mini van and converting it into a luxury unit by adding special seats, carpet, stereos and by removing the existing roof and installing an 8" to 10" raised roof. Although Classic argues that the van did not leak until after Coleman took the van to Dixon's Body Shop to have the joint resealed, the record further shows that Dixon's Body Shop only placed some black caulking on the seam over the original sealant and made no attempt to remove the roof and reseal the seam. Plaintiffs discovered cracks in the caulking around the van's roof one week after the sale. It is apparent, therefore, that the van's leaking problem must be attributable to Classic's raising of the roof and resealing the seam. After carefully reviewing the testimony of all the witnesses and the record as a whole, we do not find the trial court's factual determination that the van's roof was defective at the time of the sale to be clearly erroneous.
Classic further contends the trial court awarded plaintiffs an excessive amount as a reduction in the purchase price. The trial court held that plaintiffs were entitled to a reduction of the purchase price of $23,312.52 by the sum of $15,000 with Coleman and Classic being held jointly liable. The trial court awarded defendants a $2,187.36 credit for use of the van calculated at $.21 per mile for 10,416 miles.
LSA-C.C. Article 2531 provides as follows:
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
The purchaser of a defective thing has the option of seeking a rescission of the sale or a reduction in the price after the seller is unable or fails to repair the defective thing. LSA-C.C. Art. 2541. But in a redhibitory suit, the trial judge may decree a reduction of the price when the defect complained of does not render the thing useless or its use so inconvenient that it is altogether unsuited for its intended purpose. LSA-C.C. Art. 2543; Acadiana Health Club, Inc. v. Hebert, 469 So.2d 1186 (La.App. 3rd Cir.1985). The proper measure for reduction in price in a redhibitory action is the difference between the sale price and the price a reasonable buyer and seller would have agreed upon had they known of the defect. C.C. Art. 2531; Dickerson v. Begnaud Motors, Inc., 446 So.2d 536 (La.App. 3rd Cir. 1984), writ denied, 449 So.2d 1349 (La. *1370 1984). Where a reduction in the price is awarded, the trial judge has much discretion in assessing the amount of reduction, and its award should not be modified in the absence of a clear showing of abuse of that discretion. Leonard v. Daigle Pontiac-Buick-GMC, Inc., 413 So.2d 577 (La.App. 1st Cir.1982). In reviewing the award, this court's function is not to determine what it considers an appropriate reduction in the purchase price based on the evidence in the record, but rather only to review for an abuse of the trier-of-fact's much discretion in making the award. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The record shows that the trial court considered the testimony of all of the witnesses and that the trial court personally inspected the van in the presence of the attorneys and some of the litigants. The court was of the opinion that rescission of the sale was an inappropriate remedy, since the leaking did not render the van so inconvenient that it was altogether unsuited for its intended use. The court found that the caulking and weather stripping applied by Dixon's Body Shop did not stop the vehicle from leaking when it rained. Based on the record and the personal inspection by the trial judge, we cannot say that the trial court abused its much discretion in making the reduction award.
Classic also contends the trial court's $5,000 award for attorney's fees was unreasonable. LSA-C.C. Art. 2545 provides:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages." (Emphasis added.)
To recover attorney's fees the buyer must prove knowledge of the defect by the seller. However, he need not prove wilful misrepresentation; he need only show actual or constructive knowledge by the seller. Therefore, if the seller knew or should have known of the defect and failed to declare it to the buyer, the seller is liable for reasonable attorney's fees. Nelkin v. Piotrowski, 448 So.2d 173 (La.App. 5th Cir. 1984); Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1st Cir. 1975).
The record shows that Classic customized the van at Coleman's request and, inter alia, raised the roof and installed a new windshield. There is no testimony that either Classic or Coleman water-tested the van prior to the sale. The trial court found it obvious, after physical inspection, that the van leaked at the seam between the windshield and the raised roof. Therefore, we can only conclude after a thorough review of the record that Classic and Coleman knew or should have known that the van was defective and obviously failed to make this fact known to the Harpers at the time of the sale. Wade v. McInnis-Peterson Chevrolet, Inc., supra.
The record shows that the trial of this matter lasted approximately 2½ hours and that plaintiffs deposed only one person before trial. This was a relatively uncomplicated case. Under these circumstances, we find the $5,000 award for attorney's fees excessive and reduce the award to $3,000.
For the foregoing reasons, the judgment of the trial court is affirmed as amended. All costs of this appeal are assessed to Classic Manufacturing, Inc.
AFFIRMED AS AMENDED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.