664 So.2d 855 (1995)
Ancy MECHE and Belinda Meche, Plaintiffs-Appellees,
v.
HARVEY, INC. and Van Vickery, Defendants-Appellants.
No. 95-848.
Court of Appeal of Louisiana, Third Circuit.
December 6, 1995.
*856 Ian A. MacDonald, for Ancy and Belinda Meche.
Gerald Thomas Arbour, for Harvey, Inc. dba Harvey Toyota.
*857 Before KNOLL, THIBODEAUX and AMY, JJ.
KNOLL, Judge.
This redhibition case involves the sale of a 1991 Mitsubishi Mirage that had been sold without informing the buyers that it had been previously wrecked and damaged. The trial court rescinded the sale and awarded attorney's fees in favor of the plaintiffs. Defendant appeals and assigns the following errors: (1) the trial court erred in granting a rescission of the sale rather than a reduction of the sale price, (2) the trial court should have granted the defendant a credit for the plaintiffs' extensive use of the vehicle, and (3) the trial court erred in finding that the defendant had constructive knowledge of the defect for purposes of finding the defendant in bad faith.[1] Plaintiffs answered the appeal and requested additional attorney's fees for defending the appeal. We affirm and award additional attorney's fees.

FACTS
On Friday, November 1, 1991, Ancy Meche and his wife, Belinda, were shopping for a new vehicle to replace their two older cars that were becoming unreliable. They went to defendant's dealership where they were shown several vehicles by Van Vickery, a salesman for Harvey, Inc. It became apparent that they could not afford the payments for a new vehicle, so they looked at some program cars, which are vehicles that were previously owned by rental agencies. Program cars are usually under warranty and have relatively low mileage. The Meches were told that program cars were well maintained by the rental agencies and were "like new."
On November 1, 1991, the Meches bought a 1991 Mitsubishi Mirage program car. The car had 6,142 miles, which is in the low range for a program car. The Meches looked it over and took it for a short test drive. They did not notice anything wrong with the car, and Mr. Vickery did not tell them that the car had been previously wrecked and damaged. While the paperwork was being completed, Mr. Vickery sent the car to be cleaned and detailed. The full purchase price of the car, including financing, was $13,409.20.
The Meches first noticed problems with the car while they were on the way home. They heard wind whistling through the passenger side windows. The next day, the side panels on the passenger side of the car came loose. The Meches took the car back to Harvey for repairs on the following Monday. Mrs. Meche pointed out to Mr. Vickery that the doors on the right side of the car were not aligned properly, and she asked if the car had ever been wrecked. Mr. Vickery said that it had not.
When the car was returned to the Meches, it still had problems with wind whistling through the doors on the passenger side. Also, Mrs. Meche noticed rough spots in the paint on the right side of the car, and the trim on the right side of the car again came loose. The car was returned to Harvey for repairs. Mrs. Meche inquired once more about the car being previously wrecked. Mr. Vickery said that it had not. Although the rough spots on the paint were buffed out, Mr. Vickery refused to repair the passenger side doors.
On November 2, 1992, the car was struck on the driver's side by another vehicle. In the course of the repair work, the repairman noticed that the car had been wrecked and repaired on the passenger side. The repair work on the passenger side was obvious to the repairman who noted that the doors did not properly align, that there was paint over spray in the door-jambs, and that there was bondo work on the right side. The body repairman estimated that it would cost $3,000 to correctly fix the right side and that even then the car would not be as good as one that had not been wrecked.
At the time of trial, the car had approximately 53,000 miles on the odometer. Although the car had been reliable mechanically, the passenger side doors were not aligned *858 and the air leak on the right side had never been resolved. Mrs. Meche stated that the air leak made a lot of noise in the car's interior and made the car uncomfortably cold in the winter months.
The trial court rescinded the sale, finding that the car was wrecked and damaged before the sale and consequently had a redhibitory defect, and that had the Meches known the vehicle was wrecked and damaged, they would not have purchased the car. The trial court refused to award defendant a reduction for the Meches' use of the vehicle, finding that the defendant failed to prove the value of the Meches' use, and further, that any value the Meches may have derived from the use was greatly outweighed by the inconvenience caused by the damaged vehicle. The trial court further found that the defendant had constructive knowledge of the defects, and were, therefore, liable for attorney's fees of $3,285. The plaintiffs' claims under the Unfair Trade & Consumer Protection laws were denied. Plaintiffs do not appeal this issue.

RESCISSION OF THE SALE
Defendant asserts that only a reduction of the sale price is warranted in this case, and that the trial judge erred in granting a full rescission of the sale.
Although a court may decree a mere reduction in the purchase price in an action in redhibition, rescission is warranted where such defects are present that render the thing absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it, had he known of the vice. La.Civ. Code art. 2520. Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La.1992).
The Mitsubishi Mirage purchased by plaintiffs had many defects: problems with air seeping in through the passenger side, trim that repeatedly came unattached, uneven paint, and parts missing on the car's undercarriage. The record reflects that the Meches repeatedly returned the car for repairs and that some of the defects were never fixed.
The record reflects that the Meches sought dependable, trouble-free transportation, and that although the car was dependable, it was far from trouble-free. They were in the market for a new car, but settled on a program car after they were convinced by defendant that program cars were well-maintained and "like new." The plaintiffs stated that they would not have purchased the car had they known that it had been wrecked. Further, Mr. Vickery admitted that he would not have sold the car had he known it had been previously wrecked. It is clear from our review of the record that no sale would have occurred if the parties knew of the car's defect.
We agree with the trial court's determination that knowledge of the defect would have altogether precluded the sale of the car. We therefore affirm the trial court's rescission of the sale.

CREDIT FOR USE
Although the plaintiffs put at least 45,000 miles on the car, the trial court did not give the defendant credit for the use of the car by the Meches. We note that the decision to grant a credit for use is within the discretion of the trial court. In Deblieux v. Arkla Industries, Inc., 390 So.2d 233 (La. App 3 Cir.1980), writ denied, 396 So.2d 901 (La.1981), we stated:
Compensation for the buyer's use, however, ought not to be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair.
Deblieux, 390 So.2d at 236; quoting Alexander v. Burroughs Corporation, 359 So.2d 607 (La.1978).[2]
*859 The trial court noted that the defendant has the burden of proving the value of the buyer's use of the vehicle, and that the seller had failed to introduce any evidence of the value of plaintiffs' use. Furthermore, the trial court concluded that any value derived from the use of the vehicle was greatly outweighed by the inconvenience caused by the damaged vehicle. It is apparent that the defects in the vehicle caused great inconvenience to the Meches. It is also apparent that some of the defects were never addressed by the defendant despite plaintiffs repeated requests that they be resolved. We do not find that the trial court abused its discretion in refusing to grant credit for plaintiffs' use of the car.

ATTORNEY'S FEES
Although the trial court held that there was no evidence showing that the defendant had actual knowledge of the defect, it found that the defendant had constructive knowledge for purposes of awarding attorney's fees. The trial court noted that there were telltale signs of body repair on the vehicle that anyone with minimal experience in body repair would have immediately discovered. The trial court also noted that the defendant had ample opportunity to discover the defects when the automobile was detailed prior to delivery to the Meches.
The seller of a thing who is not the manufacturer is not presumed to have knowledge of the vice. In the case sub judice, defendant is not the manufacturer and, therefore, is not presumed to have knowledge of the defect. Nevertheless, In Harper v. Coleman Chrysler-Plymouth-Dodge, Inc., 510 So.2d 1366 (La.App 3 Cir.1987), we stated:
To recover attorney's fees the buyer must prove knowledge of the defect by the seller. However, he need not prove willful misrepresentation; he need only show actual or constructive knowledge by the seller. Therefore, if the seller knew or should have known of the defect and failed to declare it to the buyer, the seller is liable for reasonable attorney's fees.
Harper, 510 So.2d at 1370.
Plaintiffs could not prove that defendant had actual knowledge of the defects. Nevertheless, they were able to show that the defects were obvious to anyone with experience in body work and that defendant inspected the car closely at least once prior to the sale.
The record supports that any reasonable auto dealer would have discovered the defects in the vehicle caused by the prior wreck. The repair job on the passenger side was of relatively low quality and there was paint over spray from the repair on the passenger door jambs. We note that Mr. Vickery refused to consider the possibility that the car had been damaged, even when directly confronted by the Meches with the obvious signs of bodywork. Although this does not prove Mr. Vickery had actual knowledge of the defects, it is relevant in the determination of his credibility. A seller may not simply turn a blind eye to defects for the purpose of avoiding liability under redhibition. Accordingly, we conclude that the trial court did not err in finding that defendants should have been aware of the prior damage to the vehicle, and we affirm the award of attorney's fees.
Plaintiffs answered the defendant's appeal and requested additional attorney's fees for opposing defendant's appeal. An increase in attorney's fees should be awarded when a party who was awarded attorney's fees in the trial court is forced to and successfully defends an appeal. Stutes v. Rossclaire Construction, Inc., 575 So.2d 466 (La. App. 3 Cir.1991). Therefore we award an additional $1,800.00 in attorney's fees for services rendered in connection with this appeal.
For the foregoing reasons, the judgment of the trial court is amended to reflect an increase in plaintiff's attorney's fees of $1,800.00. The judgment is otherwise affirmed. *860 Costs of this appeal are assessed to the defendant.
AFFIRMED AS AMENDED.
NOTES
[1] Defendant also assigns as error the trial judge's failure to recuse himself. We find this assignment meritless and improperly preserved for appeal. We will address this issue in an unpublished companion opinion.
[2] In the case sub judice, the trial court erroneously cited the above language as being found in Huval Baking Co., Inc. v. Fontenot, 629 So.2d 431 (La.App 3 Cir.1993). This was an oversight on the part of the trial court, which obviously intended to instead cite Boudreaux v. Harvey, Inc., 629 So.2d 429 (La.App. 3 Cir.1993), the redhibition case immediately preceding Huval. In Boudreaux, the Third Circuit Court of Appeal affirmed a decision of a trial court in denying a credit for use in a redhibition action.