779 So.2d 793 (2000)
Randy McGOUGH and Darla McGough, Plaintiffs-Appellees,
v.
OAKWOOD MOBILE HOMES, INC. and River Valley Homes, Defendants-Appellants.
No. 34,091-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
*796 Roedel, Parsons, Koch, Frost, Balhoff & McCollister by Christina B. Peck, Counsel for Appellant, Oakwood Mobile Homes, Inc.
Gold, Weems, Bruser, Sues & Rundell by J. Kendall Rathburn, Counsel for Appellant River Valley Homes.
John B. Hoychick, Counsel for Appellees.
Before BROWN, PEATROSS & DREW, JJ.
PEATROSS, J.
In this redhibitory action, the trial court rendered judgment in favor of the purchaser of a mobile home and against the seller and manufacturer, ordering rescission of the sale and return of all monies paid to the seller, subject to a credit of $75 per month (totaling $17,384.53); awarding damages in the amount of $15,000 to the purchaser for mental anguish, aggravation and inconvenience; awarding the purchaser attorney fees in the amount of $21,757.77, plus judicial interest from date of demand; and assessing all costs to the seller and manufacturer. The trial court granted the seller's indemnity claim against the manufacturer for the entire amount owed by the seller to the purchaser, but denied the seller's request for attorney fees and costs in defending the claim. The manufacturer's motion for new trial was denied by the trial court. The seller and manufacturer appeal, both arguing that rescission of the sale and the award of damages for mental anguish were improper. Additionally, the seller challenges the trial court's finding that it was in bad faith regarding the sale of the mobile home and was, therefore, liable for damages and attorney fees. Finally, the manufacturer assigns as error the trial court's granting of the seller's request for full indemnification from the manufacturer for any amounts owed by it to the purchaser as a result of the lawsuit and the trial court's order that the manufacturer return any payments made by the purchaser to the seller. For the reasons stated herein, the portion of the judgment awarding the purchaser nonpecuniary damages is vacated and set aside; the portion of the judgment granting the seller's claim for indemnity against the manufacturer is reversed; and, in all other respects, the judgment is affirmed.

FACTS
Plaintiff Darla Plumley McGough[1] purchased a mobile home from Oakwood Mobile Homes, Inc. ("Oakwood"), on April 20, 1996. The mobile home was manufactured by River Valley Homes ("River Valley"), a division of Spirit Homes, Inc., in Bigelow, Arkansas, and was originally sold to Oakwood and placed on Oakwood's sales lot in Texarkana, Arkansas. After approximately one year on the Texarkana lot, on March 22, 1995, the mobile home was transferred to Oakwood's Bossier City, Louisiana, lot, which is where Mrs. McGough purchased it.
The McGoughs visited the Oakwood mobile home lot in Bossier City on two occasions before purchasing the mobile home. During their initial visit to the lot, the couple was approached by Oakwood salesperson Gary Burrows, who ultimately sold the mobile home to Mrs. McGough. At *797 that time, Mrs. McGough advised Mr. Burrows that they were seeking a home in the range of $25,000; and Mr. Burrows showed the McGoughs several mobile homes, manufactured by Oakwood, which were among the "nicest" homes on the lot. Mrs. McGough filled out a credit application at that time; and, according to Mr. Burrows' deposition testimony, she was approved for the purchase of an Oakwood home up to a purchase price of $29,000. He then contacted Mrs. McGough and requested that she return to the lot to view additional homes.
Mrs. McGough testified that, during their second visit to the Oakwood lot, she and Mr. McGough toured four or five mobile homes which were not as nice as the first group they had seen on their prior visit. Mr. Burrows admits in his deposition testimony that, at this point, he utilized the tactic of "bait and switch" in order to sell the River Valley home to Mrs. McGough. Knowing that the home was of inferior quality to the Oakwood homes (for which Mrs. McGough did qualify), Mr. Burrows told Mrs. McGough that the only home for which he could secure financing for her was the River Valley home. He testified as follows:
Q: What did you do with Mrs. [McGough] when she got to your lot on the second visit:
A: Took her back out on the lot. Met her on the lot and took her back out to a River Valley house, said "Darla, I'm sorry. Your credit came up kind of shaky. We can get you approved, but it's only going to be on this home right here."
Q: I thought you just testified that she qualified for an Oakwood home?
A: That's correct.
Q: Then why did you show her a River Valley home?
A: Because she was in a situation where I could enable ourselves to get rid of this one River Valley home once and for all.
Q: Well, using your own phraseology, did you not shoot yourself in the foot by showing her a River Valley home when she qualified for an Oakwood?
A: That's correct. I would be shooting myself in the foot showing that house up front. Bait and switch is what I was getting at.
Q: So it was a bait and switch?
A: That's correct.
Q: You admit that it was a bait and switch?
A: Oh, yes.
Unaware of Mr. Burrows' sales tactic, the McGoughs decided to purchase the River Valley mobile home, which they both testified seemed to be the best quality home of the group from which they were told to choose.[2]
The McGoughs paid a down payment on the mobile home in the amount of $3,571 and the remainder of the purchase price was financed through Oakwood Acceptance Corporation. The McGoughs have made monthly payments on the mobile home since the purchase.
The problems with this mobile home are numerous and our discussion must begin at the time of purchase. Apparently, there were four problems in the mobile home of which Mrs. McGough was aware prior to her purchase of the home. In her testimony at trial, Mrs. McGough admitted that she saw water stains on the lower portions of the interior walls of the mobile home, a crease in the living room ceiling, *798 cuts in the linoleum in the master bathroom and a hole in the wall beside the bathtub in the master bathroom. Mrs. McGough inquired about the water stains and Mr. Burrows assured her that the stains were from the initial storing of the paneling prior to installation in the mobile home (wall paneling standing in water) and would be concealed by molding that was to be installed by Oakwood. Both Mr. and Mrs. McGough testified that they did not think that the crease in the ceiling was a major problem, but was only a cosmetic defect. Mr. Burrows assured the McGoughs that all problems would be repaired by Oakwood.
Oakwood and River Valley claim that other conditions, such as silicone on the exterior of the mobile home, were also present at the time Mrs. McGough purchased the mobile home. Mrs. McGough, however, testified that she was unaware of silicone on the exterior of the mobile home; and Mr. McGough testified that, while he noticed silicone on a couple of windows, he thought that was "normal." Additionally, there is some indication in the record that the McGoughs may have noticed the carpet separating in spots in the home prior to purchase. Mrs. McGough, however, testified that the carpet by the front door of the mobile home initially looked as if the door had just created a mark on the carpet from being opened and closed. It was not until after the mobile home was delivered that the full extent of the carpet problems became apparent.
According to the McGoughs, once the mobile home was delivered, numerous other problems became apparent, including the tears in the carpet; dented and loose exterior panels[3]; loose interior walls around the roof; constant leaking of the roof all over the home during rain; cuts in the linoleum in the kitchen and both bathrooms; areas of missing carpet padding which created "sink holes;" large humps in the floor, especially in the kitchen area; and plumbing problems in the second bathroom. Oakwood repair person, Ronnie Wolfe, did attempt to repair these problems after delivery of the mobile home, some of which were actually corrected. Many of the problems, the most significant of which was the leaking, however, kept recurring.
Mrs. McGough further testified that, as a result of continued attempts at repair, there are now two layers of linoleum in the second bathroom and three layers in the master bathroom and the linoleum still rolls up around the appliances. She also testified that the molding that was intended to cover the water stains on the walls was three different types, which did not match, and that there were areas where the molding work was not complete. Additionally, one of the Oakwood workers got glue on the walls, broke the toilet and made cuts in the linoleum around the base of the toilet while attempting to make repairs. Another defect noted by Mrs. McGough was the cracking of the walls behind the refrigerator, under the kitchen window and near the front door. Additionally, the exterior walls were bowed and several doorknobs in the mobile home did not work.[4] Finally, Mrs. McGough testified that the hole in the master bathroom wall was never repaired; she was told that the particular type of wallboard in the room was no longer available.
The most significant problem with the mobile home was leaking during rain. Within one month of delivery of the mobile home, during the first rain after its delivery, *799 Mrs. McGough noticed puddles of water on the floor. According to the McGoughs, from that time forward, whenever it rained, the walls in every room of the mobile home became wet; the carpet became saturated in areas; and, as a result of this constant leaking, the entire home smelled sour and there was mold and mildew growing in several areas. Despite efforts on the part of Mr. Wolfe to repair the leaks, which, again, were performed after the purchase and delivery of the mobile home, the problem persisted. In fact, Mr. McGough testified that the existing water stains that were present at the time they purchased the home were approximately 2 to 3 inches in height along the base of the walls, and are now much larger. According to him, in one of the bedrooms, the water mark is several feet high from water damage.
Frustrated with Oakwood's failure to adequately repair the mobile home, and, at the suggestion of Mr. Wolfe, Mrs. McGough called the State Fire Marshall's office to request an inspection. Mr. Wolfe testified that he, too, notified the Fire Marshall's office of Mrs. McGough's situation because Oakwood had informed him that he had reached his spending limit for repairs on this mobile home. Fire Marshall Rick Hayes conducted an inspection of the mobile home noting 20 necessary repairs to the mobile home and charged River Valley with the responsibility of making the repairs. River Valley sent two servicemen to the mobile home, one of whom repaired the exterior problems and the other repaired the majority of the interior problems. River Valley claims that the repair work was suspended due to the filing of this lawsuit[5]; however, Mrs. McGough claims that River Valley ceased work and sent a letter to the Fire Marshall's office stating that the work had been completed to the customer's satisfaction. Mrs. McGough claims she was not satisfied and filed suit "a couple" of months after River Valley ceased the repair work.
The McGoughs filed suit against Oakwood and River Valley on February 4, 1997, seeking rescission of the sale; return of purchase price with interest; reimbursement of reasonable expenses of the sale; and costs and attorney fees. By amended petition, the McGoughs sought, in the alternative, reduction of purchase price. Oakwood answered the petition and included a third party demand for indemnification against River Valley for any damages which may be awarded Plaintiffs against Oakwood. River Valley answered the petition and third party demand and included a cross-claim against Oakwood for indemnification. As previously stated, the trial court found in favor of Mrs. McGough and against Oakwood and River Valley ordering rescission of the sale and return of all monies paid Oakwood, subject to a credit of $75 per month (totaling $17,384.53); awarding damages in the amount of $15,000 to Mrs. McGough for mental anguish, aggravation and inconvenience; awarding her attorney fees in the amount of $21,757.77, plus judicial interest from date of demand; and awarding her all costs. The trial court granted Oakwood's indemnity claim against River Valley for the entire amount owed by Oakwood to Mrs. McGough, but denied Oakwood's request for attorney fees and costs in defending the claim. River Valley's motion for new trial was denied by the trial court and this appeal ensued.

DISCUSSION

Rescission
Both Oakwood and River Valley argue that rescission was inappropriate in this case due to Mrs. McGough's knowledge of defects at the time of the purchase. After careful review of the testimony of all witnesses, *800 however, we find no manifest error in the trial court's allowing Mrs. McGough to rescind the sale of the mobile home.
In general, a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The existence of a redhibitory defect is a question of fact which cannot be disturbed unless the record establishes that the finding is manifestly erroneous. Ford Motor Credit v. Laing, 30,160 (La.App.2d Cir.1/21/98), 705 So.2d 1283; McMorris v. Marcotte Builders, L.L.C., 98-2302 (La. App. 1st Cir.12/28/99), 756 So.2d 424, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 1158. Similarly, the determination of whether a defect is apparent by reasonable inspection is a factual determination that will not be disturbed by the appellate court unless manifestly erroneous. McMorris v. Marcotte Builders, L.L.C., supra.
Under the manifest error standard of review, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. The linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are in fact reasonable. Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that, had it been sitting as a trier of fact, it would have ruled differently. Id. If there are two permissible views of the evidence, the factfinder's choice between them can virtually never be manifestly erroneous or clearly wrong. Id.
The warranty against redhibitory defects is found in La. C.C. art. 2520, which provides as follows:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
A purchaser may seek to rescind the sale under the provisions of La. C.C. art. 2520. Rescission of a sale is warranted when the existence of some vice or defect in the thing sold renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. La. C.C. art. 2520; Palomo v. LeBlanc Hyundai Partnership, 95-278 (La.App. 5th Cir.10/31/95), 665 So.2d 414, writ denied, 96-0399 (La.3/22/96), 669 So.2d 1214.
Article 2521 provides that a "seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." Generally, the seller warrants the thing sold against hidden or non-apparent defects. La. C.C. arts. 2475 and 2521. Apparent defects are those defects that the buyer might have discovered by simple inspection, while hidden or non-apparent defects are those which cannot be discovered by simple inspection. Rey v. Cuccia, 298 So.2d 840 (La.1974); McMorris v. Marcotte Builders, L.L.C., supra, citing Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127 (La. *801 App. 1st Cir.1992). Simple inspection involves more than mere casual observation; it requires the buyer who observes defects to conduct further investigation as would be conducted by a reasonably prudent buyer acting under similar circumstances. Rey v. Cuccia, supra; McMorris v. Marcotte Builders, L.L.C., supra; Landaiche v. Supreme Chevrolet, Inc., supra.
In order to determine whether a defect is apparent upon simple inspection, the courts have used a reasonableness standard, i.e., whether a reasonably prudent buyer acting under similar circumstances would have discovered the presence of a defect. See Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963). Furthermore, a buyer is only under a duty to make an inspection that is reasonable in light of all the circumstances surrounding the sale. Whether an inspection is reasonable depends upon the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection and the assurances made by the seller. Rey v. Cuccia, supra; Creger v. Robertson, 542 So.2d 1090 (La.App. 2d Cir.1989); McMorris v. Marcotte Builders, L.L.C., supra; Landaiche v. Supreme Chevrolet, Inc., supra. The buyer is under no obligation, however, to inspect with expertise or to deface the thing purchased while inspecting it. Barker v. Tangi Exterminating Co., 448 So.2d 690 (La.App. 1st Cir.), writ denied, 452 So.2d 171 (La. 1984).
A purchaser must prove that the defects existed at the time of sale. Rey v. Cuccia, supra; Ticheli v. Silmon, 304 So.2d 792 (La.App. 2d Cir.1974). A purchaser may prove the existence of redhibitory defects at the time of the sale not only by direct evidence of eyewitness, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of sale. Rey v. Cuccia, supra; Ticheli v. Silmon, supra. The appearance of defects within a relatively short period of time after purchase may lead to the reasonable inference that the defects existed at the time of the sale. Doell v. Lachney, 544 So.2d 519 (La.App. 5th Cir.1989); Trigg v. Camper Village, Inc., 424 So.2d 1085 (La.App. 1st Cir.1982), writ denied, 429 So.2d 134 (La.1983).
Multiple defects can collectively form the basis of a redhibitory action, even though many of the defects are minor or have been repaired. Meche v. Harvey, Inc., 95-848 (La.App. 3d Cir.12/6/95), 664 So.2d 855, writ denied, 96-0084 (La.3/8/96), 669 So.2d 402.
Both Oakwood's and River Valley's primary argument regarding rescission lies in Mrs. McGough's alleged knowledge of the defects at the time she purchased the mobile home. Essentially, Oakwood and River Valley argue that, because Mrs. McGough was aware of the water stains, etc., she was on notice of a possible leak and her failure to investigate further should bar her action in redhibition. This argument, however, is flawed in at least two respects.
First, despite her knowledge of the water stains on the paneling, the record reveals no evidence that Mrs. McGough had any knowledge at the time of sale that the mobile home had defects which would result in unremitting leakage during rain, or knowledge of the numerous other defects which surfaced shortly after delivery of the mobile home. The record supports the conclusion that the leakage problem emanated from some defect in the roof of the mobile home, which was not discoverable on simple inspection. Indeed, climbing on the roof to inspect it prior to purchase is not within the duty of simple inspection imposed upon a buyer. Smith v. Chang, 467 So.2d 1277 (La.App. 4th Cir.1985); Hunter v. Wilson, 355 So.2d 39 (La.App. 3d Cir.), writ denied, 357 So.2d 1154 (La.1978).
Second, the record clearly reveals that, once Mrs. McGough noticed the water stains, she did, in fact, inquire of Mr. Burrows as to the cause of the stains. Mr. *802 Burrows responded to Mrs. McGough's inquiry by assuring her that the stains were the result of the panels standing in water during storage, prior to installation in the mobile home. Moreover, Mr. Burrows further assured Mrs. McGough that the stains would be concealed by molding to be installed by Oakwood. We can find no reason why Mrs. McGough was not entitled to rely on the assurances of Mr. Burrows and his promises to repair any problems noted by the McGoughs at the time of sale.
The trial court's comprehensive and well-written opinion indicates that it gave careful consideration to the myriad of problems associated with this mobile home, the circumstances surrounding the sale and the subsequent attempts to repair the mobile home by both Oakwood and River Valley. Mr. Burrows admitted in his deposition that the problems which became apparent after delivery of the mobile home to Mrs. McGough were vast; he testified that there was poor workmanship from the "base of the floor to the top of the house" and that "there wasn't one thing right with the home." Additionally, Mr. Burrows testified that he had never seen leaks like this particular mobile home exhibited. Further, Mr. Wolfe testified that, although many of the repairs he made to the mobile home, all of which occurred after the sale of the mobile home to Mrs. McGough, were not unusual post set-up repairs, he had seen very few mobile homes with such extensive water damage from leakage. Fire Marshall Hayes corroborated this testimony. Finally, Mrs. McGough testified that the leaking began the first time it rained after the mobile home was delivered, which, to the best of her recollection, was approximately one week after delivery. Without engaging in a lengthy discussion of the many defects, we will simply state that the record supports the conclusion that a sale of a mobile home took place; that latent defects existed at the time of the sale which ultimately rendered it useless to the purchaser; and that the seller was unable to repair the defects when given the opportunity to do so. See Storey v. Lambert's Limbs & Braces, Inc., 426 So.2d 676 (La.App. 1st Cir.1982), writ denied, 433 So.2d 152 (La. 1983). We are satisfied, as was the trial court, that had Mrs. McGough known of the extent of the defects in this mobile home, she would not have purchased it. On this record, we cannot say that the trial court's conclusion that rescission was warranted was manifestly erroneous.

Oakwood's bad faith; Damages and attorney fees
Oakwood also assigns as error the trial court's finding that it knew or should have known of the defective condition of the mobile and that, therefore, Oakwood was a "bad faith" seller. La. C.C. art. 2545 provides as follow:
Liability of seller who knows of the defect; presumption of knowledge
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.
A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.
A seller who is not the manufacturer of the thing is not presumed to have knowledge of the defect; it must be proven that the seller knew of the defect. Holloway v. Gulf Motors, Inc., 588 So.2d 1322 (La.App. 2d Cir.1991); Smith v. Chang, supra; Rider v. LeCompte, 398 So.2d 114 (La.App. 3d Cir.1981). We find *803 sufficient evidence in the record to support the trial court's determination that Oakwood knew or should have known that the roof leaked prior to the sale and, therefore, was in bad faith and answerable to Mrs. McGough for damages and reasonable attorney fees.
Oakwood fortuitously argues that the trial court relied on the same evidence to find that Mrs. McGough did not have knowledge of the defects in the mobile home as it did to support its finding that Oakwood did, in fact, have knowledge of the defects prior to the sale. The evidence adduced at trial and the trial court's ruling, however, do not support Oakwood's contention. As previously stated, we find no error in the trial court's determination that Mrs. McGough was unaware at the time of sale of the defects in the mobile home, which ultimately rendered it useless for its intended purpose.
There are several facts, however, which do support imputation of such knowledge to Oakwood. First, Mr. Wolfe testified that the manager of the Oakwood lot asked him to "inspect" the mobile home prior to delivery to the McGoughs. During that inspection, Mr. Wolfe found an inordinate amount of silicone on the exterior of this mobile home, which he testified appeared to be approximately six to ten months old. This fact indicates that at least some attempt to repair leaks was made during Oakwood's possession of the mobile home. Mr. Wolfe further testified that the lot manager should have observed or been aware of such a large amount of silicone on the mobile home. In fact, Mr. Wolfe asked the manager of the Oakwood lot why they were attempting to sell this mobile home as a new one, but got no response. In a facsimile transmission from Mr. Wolfe to a service representative of River Valley, which was introduced at trial, Mr. Wolfe stated that the home "was brought to our lot several months ago. This home had leak (sic) all through the wall (sic) sitting on the previous lot. Someone had siliconed the entire home."
Second, Mr. Burrows testified in his deposition that he was fully aware that this mobile home was a product of "shoddy workmanship" and "a piece of you know what." Mr. Burrows held this mobile home out to Mrs. McGough to be of a quality that he knew it was not. This misrepresentation alone may serve as a basis for a seller's liability for damages and attorney fees in a redhibitory action. La. C.C. art. 2545; Don Smart and Associates-Century 21 v. Lanier Business Products, 551 So.2d 665 (La.App. 1st Cir. 1989).
Third, there is documentary evidence in the record which indicates that at least one repair was made in a bedroom of the mobile home to correct a leaking window while in the possession of Oakwood. Evidence of repairs to a thing while in the seller's possession supports a finding of bad faith on the part of the seller. Carpenter v. Lafayette Woodworks, Inc., 94-1011 (La.App. 3d Cir.2/1/95), 653 So.2d 1187. Considering the totality of evidence, we find no manifest error in the trial court's conclusion that Oakwood either knew or should have known of the defective condition of this mobile home. We find, therefore, that it was proper to cast Oakwood in judgment for damages and attorney fees. See Meche v. Harvey, supra.

Nonpecuniary damages
Oakwood and River Valley challenge the trial court's award to Mrs. McGough of $15,000 in nonpecuniary damages, specifically for mental anguish, aggravation and inconvenience. We agree that the record in this case does not support such an award.
La. C.C. art.1998 provides that nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should *804 have known, that his failure to perform would cause that kind of loss. The supreme court has held that recovery of nonpecuniary loss can be had in cases of redhibition, provided that the obligee shows that he intended to gratify a significant nonpecuniary interest by way of the purchase; that the nature of the contract supports this contention; and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee. Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La.1992).
In determining whether damages are pecuniary or nonpecuniary, we first look to the nature of the contract. In Young, supra, the supreme court found that, although a contract to purchase a car was primarily pecuniary in nature, there are circumstances under which one purchases a car for nonpecuniary interests relating to taste, enjoyment and personal preferences of owning and driving the chosen vehicle. The supreme court illustrated this distinction by recognizing the different interests to be gratified in buying a traditional new car on one hand and the purchase of an antique or a specially-designed, custombuilt vehicle on the other.
We find that, like a new vehicle, the purchase of a mobile home is primarily pecuniary in nature. Despite that finding, however, if the record supports the gratification of a significant nonpecuniary interest in Mrs. McGough's purchase of the mobile home, she may be entitled to nonpecuniary damages. In its ruling, the trial court simply stated, "the McGoughs purchased this home with the intention that it serve as their family's primary residence, consequently, the McGoughs did have a significant non-pecuniary objective." This finding is not supported by the record. While we do not question the aggravation and inconvenience occasioned by the problems and attempted repair of this defective mobile home, we do not believe that the evidence satisfies the requirement from Young that the purchase was made to satisfy a significant nonpecuniary interest. The nature of the contract to purchase the mobile home does not make it evident, nor do the facts and circumstances surrounding the purchase demonstrate that Mrs. McGough purchased the mobile home for a significant nonpecuniary purpose. The only evidence regarding Mrs. McGough's motivation in purchasing the mobile home is that she needed a place for her family to reside. At the time of the purchase, she and Mr. McGough were living in an office and her children were living with her sister. We conclude that Mrs. McGough failed to make the requisite showing of gratification of a significant nonpecuniary interest under La. C.C. art. 1983 and Young v. Ford Motor Co., supra. This conclusion is in accord with postYoung jurisprudence.[6]
*805 Since we find that the trial court's award of nonpecuniary damages in this case was clearly wrong, that portion of the trial court's judgment awarding Mrs. McGough nonpecuniary damages in the amount of $15,000 is hereby vacated and set aside.

Indemnification
Initially, we note that the trial court found that, as manufacturer of the mobile home, River Valley was presumed to be in bad faith and was, therefore, liable for any damages and attorney fees that resulted from the defects. Since the trial court also found Oakwood to be in bad faith, both defendants were cast in judgment. We agree with this conclusion. In the same judgment, the trial court also ruled on Oakwood's third party demand against River Valley for indemnification. The trial court found in favor of Oakwood and against River Valley for all sums for which Oakwood was cast in judgment, thereby dismissing River Valley's third party demand against Oakwood. River Valley subsequently filed a motion for new trial on the issue of indemnification, which was denied by the trial court. As previously stated, River Valley answered the appeal, assigning the trial court's indemnity ruling as error and, additionally, arguing that ordering it to pay monies paid by the McGoughs to Oakwood results in the unjust enrichment of Oakwood. After review of the applicable law, we conclude that Oakwood was not entitled to indemnification under the particular facts of this case.
La. C.C. art. 2531 provides, in pertinent part, as follows:
A seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the thing was delivered by the manufacturer to the seller, for any loss the seller sustained because of the redhibition.
First, in order to be indemnified, the seller must establish that the redhibitory defects are attributable exclusively to the manufacturer. LaFrance v. Abraham Lincoln Mercury, Inc., 462 So.2d 1291 (La.App. 5th Cir.1985), writs denied, 467 So.2d 531 and 532 (La.1985). Even if this burden is satisfied, however, we note that the jurisprudence has created an exception to this general rule of indemnification. While the seller's bad faith knowledge of the defect alone does not abrogate the seller's right to indemnification, Peterson v. Coleman, Inc., 393 So.2d 372 (La.App. 1st Cir. 1980), the right to indemnification is lost where the seller is either (1) at fault in creating defects or (2) fails to cure easily remediable defects. Chaudoir v. Porsche Cars of North America, 95-729 (La.App. 3d Cir.12/6/95), 667 So.2d 569, writ denied, 96-0800 (La.5/31/96), 673 So.2d 1033. Further, where the seller's negligence is a substantial factor in aggravating or maintaining the defect, the seller loses its right of indemnification from the manufacturer. Wheeler v. Clearview Dodge Sales, 462 So.2d 1298 (La.App. 5th Cir.1985). In a case very similar to the one before us, the first circuit expounded on the exception to indemnification as stated in Wheeler, supra, stating that "when the dealer's negligence is a substantial factor in aggravating or maintaining the defect, it becomes concurrent fault sufficient to bar recovery under the second paragraph of C.C. art. 2531." Guyon v. Camper Village, Inc., 428 So.2d 1014 (La.App. 1st Cir.1983), writ denied, 431 So.2d 1 (La.1983).
In denying River Valley's motion for new trial on the issue of indemnification, the trial court found that the defects were attributable exclusively to the manufacturer, but found "[n]o evidence which showed that Oakwood caused or exacerbated the defects in the home." Such determination requires factual findings and we acknowledge that our review of the trial court's findings is governed by the manifest error standard of review. Under that standard, however, an appellate court can, and must, reverse a lower court's factual findings when the record (1) reflects *806 that a reasonable factual basis does not exist for the finding and (2) establishes that the finding is clearly or manifestly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993). If a court of appeal finds that the trial court made reversible error of law or manifest error of fact, the court of appeal must determine the facts de novo from the record and render a judgment on the merits. Rosell v. ESCO, supra. In light of the jurisprudence as outlined in this opinion, we find no reasonable factual basis in this record to conclude that Oakwood was not negligent in aggravating or maintaining the defective condition of this mobile home. As a matter of semantics, the trial court used the term "exacerbate." We believe it is clearly wrong to conclude that Oakwood's conscious indifference to the condition of this mobile home and failure to adequately maintain or repair it during Oakwood's 13 months of possession of the mobile home did not "exacerbate" its defective condition. The reasons for our conclusion are described below.
In Guyon, supra, the plaintiff purchased a defective motor home from defendant, Camper Village. Prior to the plaintiffs purchasing the motor home, the vehicle had been sitting on the Camper Village lot for approximately 18 months. During that time, it was unprotected from the elements. Additionally, the dealer used parts from the motor home to equip other vehicles. The trial court found that Camper Village had knowledge that this type of vehicle required periodic recaulking to prevent leaking, but failed to do so. This failure to maintain the motor home resulted in water accumulation in the cab of the vehicle, rotted wood, rusty water dripping on the windshield when plaintiff drove the vehicle and additional extensive water leakage. On those facts, the court of appeal affirmed the trial court's denial of Camper Village's indemnity claim against the manufacturer.
The present case is very similar to Guyon, supra; and, in many respects, the "negligence" of Oakwood is even more apparent than that of Camper Village. We have already concluded that Oakwood knew or should have known of the defective condition of the mobile home, which alone, as previously stated, will not bar an indemnity claim. Peterson v. Coleman, supra. Next, we conclude that the evidence supports the finding that the defects in the mobile home were attributable to River Valley. LaFrance v. Abraham Lincoln Mercury, supra. Mr. Burrows testified repeatedly in his deposition that the mobile home was the product of poor workmanship at the factory. Mr. Wolfe corroborated this testimony. Additionally, Fire Marshall Hayes attributed all 20 of the defects noted during his inspection to the manufacturer, specifically testifying that the roof was improperly installed at the manufacturing facility.
Our next inquiry is, therefore, whether Oakwood was negligent in either causing defects; failing to cure easily remediable defects; or aggravating or maintaining the mobile home's defective condition. Chaudoir v. Porsche Cars of North America, supra; Wheeler v. Clearview Dodge Sales, supra; Guyon v. Camper Village, supra. First, we do not believe that Oakwood actively caused any of the defects in the mobile home prior to the sale to Mrs. McGough[7], nor do we find that any of the redhibitory defects were easily remediable. We do find, however, that Oakwood's failure to adequately maintain this mobile home during its possession and its failure to repair leaks of which it knew or should have known was a substantial factor in "aggravating or maintaining" the mobile home's defective condition. Wheeler v. Clearview Dodge Sales, supra; Guyon v. Camper Village, supra. Like the motor *807 home in Guyon, the mobile home purchased by Mrs. McGough sat on the Oakwood lot in Texarkana for approximately 13 months before being transferred to the Bossier City lot, where it remained for several more weeks. There is no evidence in the record regarding any type of inspection or maintenance work performed on the mobile home during the time it was sitting on the Texarkana lot. According to Mr. Burrows, no inspection was conducted of the mobile home when it arrived at the Bossier City lot. Moreover, he was emphatic in his testimony that only minor, if any, repairs were made to the mobile home before its sale to Mrs. McGough. As previously stated, the record does reflect the repair of window leaks in one bedroom of the mobile home while in the possession of Oakwood; however, the evidence regarding the extensive water damage in the mobile home, in our opinion, renders this minor repair totally inadequate to address the problems of the mobile home.
Additionally, according to Mr. Wolfe, any attempt to repair the leakage problem with this mobile home was done improperly. The facsimile transmission from Mr. Wolfe to River Valley, referenced earlier in this opinion, is very telling in this regard. In that message, Mr. Wolfe stated that "every panel in the home was water damage[d]" when it was sold to Mrs. McGough and that "someone had silicone[d] the entire home." He later testified that putting silicone on the roof and exterior of the home in such a large amount to repair this type of leakage was not the correct method of repair. Later in the same message, Mr. Wolfe stated "[s]ince the home has been sitting on homesite it has leak[ed] several times. We seal[ed] everything we could find. I went and inspected this home and the problem is the roof has staples coming through metal and the metal is so stretch[ed] and wrinkle[ed] that it is leaking through every seams (sic)." Clearly, Oakwood's failure to take protective measures to prevent further deterioration of this mobile home during 13 months of possession aggravated or, at the very least, maintained its defective condition. Rather than sending this defective mobile home back to River Valley, or making appropriate attempts to stop the leaking of the mobile home prior to selling it, Oakwood made the conscious decision to allow this defective mobile home to sit on its lots (Texarkana and Bossier City) and deteriorate further. Oakwood then intentionally sold it, fully aware of its condition, to an unsuspecting purchaser. We believe that it was with this type of seller in mind that the exception to the right of indemnification was conceived.
In Klumpp v. XYZ Ins. Co., 547 So.2d 391 (La.App. 3d Cir.), writ denied, 551 So.2d 1322 (La.1989), the court explained the principles underlying indemnification in general:
Indemnity is due when fairness requires that one person bear the total responsibility for an injury. The basis for indemnity in the civil law is restitution, the indemnitor having been unjustly enriched when the person seeking indemnity has discharged liability that was his responsibility. A solidary debtor who pays a debt that concerns only a codebtor is, therefore, entitled to indemnity from the debtor in whose behalf the debt arose. Thus, a person who is held liable vicariously or passively for the tort of another is due indemnity from the culpable tortfeasor. One who is himself at fault, however, is not due indemnity because liability for indemnity exists only when the party seeking indemnity, the indemnitee, is free of fault and has discharged a debt that should be paid wholly by the indemnitor. The Louisiana Supreme Court in Green v. TACA Int'l Airlines, 304 So.2d 357 (La. 1974) has summed up the principle this way: indemnity shifts the entire loss from a tortfeasor only technically or constructively at fault to the person primarily responsible, while contribution apportions the loss among those jointly *808 responsible. (Internal citations omitted.)
As outlined above, Oakwood was certainly not free from fault in maintaining this mobile home in a defective condition which would ultimately render it useless to the unfortunate purchaser. We believe that Oakwood and River Valley should share the responsibility for damages occasioned by the sale of this defective home to Mrs. McGough and find no error in the trial court's conclusion in this regard. We further find, however, that, under the particular facts of this case, the trial court's finding that Oakwood was entitled to indemnity from River Valley has no reasonable factual basis in this record and was clearly wrong. Oakwood's negligence aggravated Mrs. McGough's losses; and, therefore, it is not entitled to indemnification from River Valley. In light of our conclusion on this issue, we do not reach River Valley's argument regarding the unjust enrichment of Oakwood by ordering River Valley to return payments made by the McGoughs to Oakwood.

Mrs. McGough's entitlement to attorney fees on appeal
Finally, Mrs. McGough seeks additional attorney fees for work associated with the appeal of this matter. Since, however, she did not appeal the judgment of the trial court or answer the appeals filed by Oakwood or River Valley, she may not now seek an additional award of attorney fees. Williams v. Louisiana Indem. Co., 26,887 (La.App.2d Cir.6/21/95), 658 So.2d 739; Bank of Logansport v. Sewell, 467 So.2d 1217 (La.App. 2d Cir.1985); Don Smart & Associates-Century 21 v. Lanier Business Products, supra; LaFrance v. Abraham Lincoln Mercury, Inc., supra. Additionally, we believe that the trial court's award of attorney fees in the amount of $21,757.77 adequately compensates her legal counsel for both trial and appellate work in this matter.

CONCLUSION
For the foregoing reasons, that portion of the judgment awarding Mrs. McGough nonpecuniary damages in the amount of $15,000 is vacated and set aside. The portion of the judgment granting Defendant Oakwood Mobile Home, Inc.'s third party demand for indemnification against Defendant River Valley Homes is reversed and the two defendants are liable in solido for all amounts awarded Mrs. McGough. In all other respects, the judgment of the trial court is affirmed. Costs are to be borne equally by the parties.
AWARD OF NONPECUNIARY DAMAGES VACATED AND SET ASIDE; ORDER GRANTING INDEMNITY IN FAVOR OF OAKWOOD MOBILE HOMES, INC. AND AGAINST RIVER VALLEY HOMES REVERSED; REMAINDER OF JUDGMENT AFFIRMED.
NOTES
[1] At the time of the purchase, Ms. Plumley was not married. Subsequent to the purchase of the mobile home, she married Plaintiff Randy McGough. For clarity, we will refer to her throughout this opinion as "Mrs. McGough."
[2] In a second amended petition, the McGoughs asserted claims under the Louisiana Unfair Trade Practices and Consumer Protection Act. Oakwood filed a peremptory exception of prescription with respect to these claims. Noting that Mr. Burrows' actions "certainly fall into the category of unfair trade practices," the trial court granted Oakwood's motion, holding that the claims had prescribed. That issue has not been raised on appeal.
[3] Several loose exterior panels were replaced after the home was delivered. The McGoughs do not dispute that this damage was caused during transit of the mobile home from Bossier City to the homesite and agree that such exterior transit damage was satisfactorily repaired.
[4] River Valley claims that the problems with the mobile home seem to have occurred during transport by Morgan Transport (hired by Oakwood) and not while River Valley was in possession of the mobile home. The trial court made no factual findings as to the cause of the exterior problems of the home.
[5] River Valley claims that the interior work was substantially complete when it suspended work, with only the installation of two interior wall boards and the refixing of base trim to be completed.
[6] Accord McMorris v. Marcotte Builders, L.L.C., supra, affirming the trial court's denial of general damages in a redhibitory action regarding the sale of a residential lot on which the plaintiffs planned to build a home. The first circuit noted that the nature of the contract for the sale of the lot did not indicate, nor did the facts and circumstances surrounding the purchase of the lot indicate, that the lot was purchased for a significantly nonpecuniary purpose. Additionally, we distinguish the prior decision of this court in Stonecipher v. Mitchell, 26,575 (La.App.2d Cir.5/10/95), 655 So.2d 1381, wherein a panel of this court affirmed an award of nonpecuniary damages in an action on a contract to design and build a residence on Cross Lake in Shreveport. In Stonecipher, the record contained overwhelming evidence of the sentimental and personal motivation behind the plaintiff's choice to build his home in that particular place. Similar facts simply are not present in the case sub judice. Also compare Mayerhofer v. Three R's, Inc., 597 So.2d 151 (La.App. 3d Cir.), writ denied, 600 So.2d 680 (La.1992), affirming an award of nonpecuniary damages in a redhibitory action involving a contract to build a home where the record contained evidence that the particular home was being built purely for personal satisfaction, as the final home the plaintiff would build and one which would serve as a place for entertaining. We also note an additional, significant distinction in Stonecipher and Mayerhofer in that both of those cases involved contracts to build or design homes according to the homeowner's particular tastes and preferences as opposed to the purchase of a manufactured or mobile home.
[7] It is clear, however, that several problems with the mobile home were created by faulty repair work after the home was delivered to the McGoughs, including glue on the walls, additional cuts in the linoleum flooring and broken bathroom fixtures.